**STATE of Minnesota, Respondent,**

v.

**Adolph Donte VALENTINE, Appellant.**

**No. A09–1606.**

Court of Appeals of Minnesota.

Aug. 24, 2010.

**634**

Lori Swanson, Attorney General, John B. Galus, Assistant Attorney General, St. Paul, MN, Mark A. Ostrem, Olmsted County Attorney, Rochester, MN, for respondent.

David W. Merchant, Chief Appellate Public Defender, Jodie L. Carlson, Assistant Public Defender, St. Paul, MN, for appellant.

Considered and decided by MINGE, Presiding Judge; HUDSON, Judge; and MUEHLBERG, Judge.[*]

## OPINION

MINGE, Judge.

■ Appellant challenges his conviction of two counts of domestic assault against victim J.K., his girlfriend, arguing that (1) the district court erred in allowing (a) the introduction of evidence of appellant's prior domestic assaults against appellant's other girlfriend, B.S., as relationship evi-

---

[*] Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

dence under Minn.Stat. § 634.20 (2008), (b) evidence of appellant's prior assaults on B.S. as *Spreigl* evidence under Minn. R. Evid. 404(b), (c) a police officer's testimony as an expert on battered-woman syndrome, and (d) voicemail recordings of messages to B.S.; (2) the prosecutor committed plain error by eliciting inadmissible testimony; and (3) the cumulative effect of the errors prejudiced appellant's right to a fair trial. We affirm.

## FACTS

Appellant Adolph Valentine had been dating J.K. intermittently from 2006 to 2009. On February 18, 2009, J.K. was giving appellant a ride to the residence of B.S., another girlfriend of appellant's, when they began arguing and appellant got out of the car. At trial, J.K. denied that any assault occurred, explaining that she subsequently got out of the car to accost appellant, she swung at him, he blocked her punch, and she slipped on the snow and ice and fell on her face, incurring injuries. J.K. further testified that she was angry when appellant walked away from their encounter, and to retaliate she called 911 to report that appellant hit her in the face. She spoke to police investigator Jennifer Bruessel the next day and said that she lied when she reported that appellant hit her and she tried to get the charges dismissed. J.K. concluded her testimony by reiterating that the account she was telling at trial was true—i.e., that no assault occurred.

Other witnesses contradicted this account. Another motorist testified that she saw a female driver (J.K.) and a male passenger (appellant) fighting in their car; that the male got out and began walking away; that the female turned the car around, drove on the wrong side of the road to follow the man, and yelled at the man through the window; and that the

man opened the driver's door, grabbed the woman's hair, pulled her out, and hit her in the face and neck. The motorist called 911 to report the assault.

Various people testified that J.K. told them that appellant had punched her in the face during an argument they had about appellant's other girlfriend. Police officers testified that after assisting J.K. and observing her injuries, she told them appellant assaulted her. The officers then searched for appellant. The officers reported that they saw appellant and thought he was the assailant, that when he saw them, he eluded them, and that they eventually found and arrested him. Appellant then told the police that he and J.K. had an argument in a car. The emergency-room physician testified as to J.K.'s condition and that J.K. told him appellant had assaulted her. The recordings of telephone calls made by J.K. to 911 and to B.S. describing the assault by appellant were played for the jury.

Over appellant's objection, the state presented evidence to the jury of two prior assaults by appellant on B.S. The district court admitted this as relationship evidence under Minn.Stat. § 634.20 and as *Spreigl* evidence under Minn. R. Evid. 404(b). In the first incident, appellant punched B.S. and broke her nose. In the second incident, appellant punched and kicked B.S. in the ribs and face. B.S. suffered broken ribs, a collapsed lung, and a black eye, and she was hospitalized for a week. Photos showing B.S. with a tube draining fluid from her chest and wearing a neck brace were introduced into evidence in the instant case. Although the abuse was reported to the police, B.S. did not cooperate with the investigation or prosecution of either incident.

Appellant did not testify at trial. Investigator Bruessel, the sole defense witness, testified that during a follow-up investiga-

tion, J.K. told her that she was reconsidering charges against appellant and that she lied when she told police the day before that appellant hit her. On cross-examination, the prosecutor qualified Bruessel as an expert witness on battered-woman syndrome. Then, Bruessel testified that for several reasons it is fairly common for domestic-abuse victims to recant allegations of domestic abuse: they fear that there will be consequences for reporting the abuse; they are financially dependent on the abuser; or they want to continue their relationship with the abuser.

The jury found appellant guilty of two counts of felony domestic assault and not guilty of interference with an emergency 911 call. The district court sentenced appellant to 18 months in prison on one count of felony domestic assault. This represented a downward departure from the presumptive sentence and was based on J.K.'s request. This appeal followed.

## ISSUES

1. Did the district court err in admitting evidence that appellant assaulted B.S. under Minn.Stat. § 634.20?

2. Did the district court abuse its discretion by allowing Officer Bruessel to testify as an expert witness on battered-woman syndrome?

3. Did the district court abuse its discretion by admitting voicemail messages J.K. left for B.S. after the assault?

4. Did the prosecutor commit misconduct amounting to plain error by eliciting inadmissible testimony?

5. Did the cumulative effect of the alleged errors deprive appellant of his right to a fair trial?

## ANALYSIS

### I.

The first issue is whether the district court erred in admitting evidence that ap-

pellant assaulted B.S., his other girlfriend. At trial, the district court relied on Minn. Stat. § 634.20 (2008) to admit this evidence. That statute provides:

> Evidence of similar conduct by the accused against the victim of domestic abuse, or against other family or household members, is admissible unless the probative value is substantially outweighed by the danger of unfair prejudice.... "Similar conduct" includes, but is not limited to, evidence of domestic abuse.... "Domestic abuse" and "family or household members" have the meanings given under section 518B.01, subdivision 2.

Minn.Stat. § 634.20. Appellant argues that the statute only authorizes admission of evidence of similar conduct by the accused against *the victim's* family or household members. Under this interpretation, the evidence would be inadmissible because B.S. was not a household or family member of J.K., the victim in this case. Because this issue turns on statutory interpretation, it is reviewed de novo. *State v. McCurry*, 770 N.W.2d 553, 559 (Minn.App. 2009).

In interpreting statutes, courts must "ascertain and effectuate the intention of the legislature." Minn.Stat. § 645.16 (2008). Courts construe words according to their "common and approved usage." Minn.Stat. § 645.08, subd. 1 (2008). The first question in statutory interpretation is whether the statute is ambiguous. *Am. Tower, L.P. v. City of Grant*, 636 N.W.2d 309, 312 (Minn.2001). The language of a statute is ambiguous if more than one reasonable interpretation exists. *Amaral v. Saint Cloud Hosp.*, 598 N.W.2d 379, 384 (Minn.1999). If the language of a statute is unambiguous, then courts must interpret the statute as writ-

ten without applying other principles of statutory construction. *State v. Anderson,* 683 N.W.2d 818, 821 (Minn.2004).

We construe section 634.20 as unambiguously authorizing the admission of similar-conduct evidence against the accused's (not the victim's) family or household members. The language and usage of the statute supports this conclusion in three ways: First, the language of Minn.Stat. § 518B.01, subd. 2 (2008), defines "domestic abuse" reflexively as certain acts "committed against a family or household member by a family or household member." Thus, "domestic abuse" can only be committed against a member of the accused's family. Because "similar conduct" in section 634.20 incorporates the section 518B.01, subdivision 2 definition of "domestic abuse," and because by definition the accused's family and household members are the only people the accused can commit domestic abuse against, the phrase "other family or household members" refers to the accused's family or household members.

■ Second, the context of section 634.20 further shows the unreasonableness of appellant's interpretation. Section 518B.01—which section 634.20 specifically incorporates—defines "[f]amily or household members" broadly as,

(1) spouses and former spouses;

(2) parents and children;

(3) persons related by blood;

(4) persons who are presently residing together or who have resided together in the past;

(5) persons who have a child in common regardless of whether they have been married or have lived together at any time;

(6) a man and woman if the woman is pregnant and the man is alleged to be the father, regardless of whether they have been married or have lived together at any time; and

(7) persons involved in a significant romantic or sexual relationship.

Minn.Stat. § 518B.01, subd. 2(b). As the supreme court noted, the rationale for admitting relationship evidence under section 634.20 is to illuminate the relationship between the defendant and the alleged victim and to put the alleged crime in the context of that relationship. *State v. McCoy,* 682 N.W.2d 153, 159 (Minn.2004). Obviously, evidence showing how a defendant treats his family or household members, such as his former spouses or other girlfriends, sheds light on how the defendant interacts with those close to him, which in turn suggests how the defendant may interact with the victim. But under appellant's interpretation, section 634.20 would only let in evidence of how the defendant treats the victim's family or household members, such as the victim's former spouses or other girlfriends. Absent an unusual factual scenario, these people are likely not close to the defendant, so showing how the defendant interacts with them does not suggest how the defendant may interact with the victim.

Third, the meaning of "other" is: "Being the remaining one of two or more: *the other ear* "; or "[b]eing the remaining ones of several: *His other books are packed.*" *The American Heritage College Dictionary* 985 (4th ed.2002). These definitions show that the entity identified by the label "other" is the same type as the entity initially discussed—not this ear, but the other one; not these books, but the other ones. So in stating that the past conduct of the accused must have been committed "against the victim of domestic abuse, or against *other* family or household members," the legislature creates a parallel between the victim as one "family or household member" and the other subjects

of the accused's conduct as other "family or household members." Minn.Stat. § 634.20 (emphasis added). Because of this parallel construction, one looks to the definition of "family or household" as it applies to the victim to determine how it applies to the other "family or household members." Once this is done, it becomes clear that the statute defines "family or household" as it relates to this other member to be the accused's "family or household."

This conclusion is also supported by the supreme court's analogous interpretation of Minn.Stat. § 609.185(6) (2008), which is similar to section 634.20. In *State v. Asfeld*, the supreme court held that the phrase "family or household" in section 609.185 unambiguously means the accused's family or household, not the victim's. 662 N.W.2d 534, 541–42 (Minn. 2003). In reaching this holding, the court used a very similar analysis to the analysis above concerning the word "other." *Id.* The court reasoned that a

> focus on the perpetrator's "family or household" is proper in the context of the domestic abuse statute, which addresses the behavior of the perpetrator—the abuse the perpetrator inflicts on members of *his* family or household.... With the domestic abuse murder statute, the legislature sought to penalize the repeat abuser who engages in a history of serial acts of violence against those with whom he lives.

*Id.* at 542.

Having concluded that section 634.20 authorizes the admission of evidence of domestic abuse against appellant's family or household members, we further conclude that the district court did not err in admitting evidence of appellant's abuse of his girlfriend, B.S.[1] This conclusion obviates the need to discuss the admissibility of this evidence as *Spreigl* evidence. *See State v. Gutierrez*, 667 N.W.2d 426, 435 (Minn. 2003) (declining to reach a claim that evidence was erroneously admitted on other grounds because the court had already concluded the evidence was admissible under section 634.20).

## II.

The next issue raised by appellant is whether the district court abused its discretion by allowing Officer Bruessel to testify as an expert witness on battered-woman syndrome. "The admission of expert testimony is within the broad discretion accorded a [district] court, and rulings regarding materiality, foundation, remoteness, relevancy, or the cumulative nature of the evidence may be reversed only if the [district] court clearly abused its discretion." *State v. Ritt*, 599 N.W.2d 802, 810 (Minn.1999) (quotation omitted). When challenging evidentiary rulings, "the appellant has the burden of establishing that the [district] court abused its discretion and that appellant was thereby prejudiced." *State v. Amos*, 658 N.W.2d 201, 203 (Minn. 2003).

To be admissible, expert testimony must be relevant, helpful to the trier of fact, and its prejudicial effect must not substantially outweigh its probative value. *State v. Grecinger*, 569 N.W.2d 189, 193 (Minn.1997). Appellant argues that the district court abused its discretion in allowing Officer Bruessel to testify as an expert witness on battered-woman syndrome for three reasons: (1) she was not

---

1. Appellant also argues that the rule of lenity dictates that section 634.20 be interpreted in his favor. The rule of lenity applies to ambiguous criminal statutes. *State v. Peck*, 773 N.W.2d 768, 772 (Minn.2009). Because we conclude section 634.20 is unambiguous, the rule of lenity does not apply. *Id.*

qualified to testify as an expert witness; (2) her testimony did not help the jury understand the evidence or resolve fact disputes as required by Minn. R. Evid. 702; and (3) her testimony exceeded the scope of direct examination. We consider each argument in turn.

■ Under Minn. R. Evid. 702, a witness can qualify "as an expert by knowledge, skill, experience, training, or education." Bruessel testified that she has a bachelor's degree in criminal justice and corrections. She also has five years of experience in law enforcement and eight years of experience as a probation officer. She completed numerous training sessions relating to domestic violence and cycles of domestic abuse during these jobs. As a police officer, she has frequently dealt with domestic-violence issues. Based on this testimony, we conclude that the district court did not abuse its discretion in concluding that she was qualified to testify as an expert on this subject.

■ Appellant's next argument is that Bruessel's testimony did not help the jury understand the evidence or resolve fact disputes as required by Minn. R. Evid. 702. The state may elicit expert testimony about battered-woman syndrome to explain a victim's counterintuitive behavior and exculpatory account of an incident, provided that the expert testimony is limited to describing the syndrome and its characteristics and the expert does not offer an opinion as to whether the victim actually suffers from the syndrome. *Grecinger*, 569 N.W.2d at 195–97. Bruessel's testimony met all these criteria. She merely described the syndrome, which helped the jury understand the evidence by providing a possible explanation for J.K. (a) recanting her accusations against appellant (a counterintuitive behavior), (b) testifying that her injuries occurred from a fall (exculpatory testimony), and (c) initial-

ly refusing to cooperate in pressing charges against appellant. The district court did not abuse its discretion in deciding that the testimony met the helpfulness test of rule 702.

■ Appellant also argues that the expert testimony exceeded the scope of direct examination in violation of Minn. R. Evid. 611(b). Because appellant did not make this objection below, it is reviewed for plain error. *State v. Griller*, 583 N.W.2d 736, 740 (Minn.1998). Under the plain-error standard, appellate courts will reverse only if there is error that is plain, affects substantial rights, and seriously affects the fairness or integrity of the judicial proceedings. *Id.* On direct examination, Bruessel testified that J.K. told her that she was reconsidering charges against appellant and that she lied about the assault the previous day. Bruessel's testimony on cross-examination that domestic-abuse victims often recant their allegations clearly relates to this testimony and thus was within the scope of direct examination.

■ Although Bruessel's testimony in the role of an expert on cross-examination was new, this was not plain error for several reasons. The district court has substantial discretion in allowing expert testimony. *Koch v. Mork Clinic, P.A.*, 540 N.W.2d 526, 529 (Minn.App.1995), *review denied* (Minn. Jan. 12, 1996). Furthermore, even if admitting the testimony was error, it was harmless. Appellant could have pursued any aspect of the expert testimony on redirect examination. Finally, the prosecutor could have called Bruessel as a rebuttal witness.

Because the district court did not abuse its discretion in admitting the testimony of Bruessel as an expert, we do not consider appellant's arguments that he was prejudiced by this testimony.

## III.

The next issue raised by appellant is whether the district court abused its discretion by allowing the prosecution to play the recordings of voicemail messages J.K. left for B.S. The district court based its ruling on Minn. R. Evid. 807, the residual hearsay exception. These messages recounted that appellant had assaulted J.K.

Rule 807 allows admission of reliable out-of-court statements not otherwise covered by an exception or exclusion. Appellant does not contest the hearsay ruling, rather, appellant argues that the messages are unfairly prejudicial and cumulative. In essence, appellant argues that the messages should be excluded as unfairly prejudicial and cumulative under Minn. R. Evid. 403.

The messages indicate that appellant assaulted J.K., the main issue at trial. They are very probative on this central point. Although the messages contain comments that overstate J.K.'s injuries and a statement that J.K. hopes appellant does not kill B.S., the district court did not abuse its discretion in finding that any unfair prejudice from these comments did not *substantially outweigh* the messages' high probative value. *See* Minn. R. Evid. 403 (allowing exclusion of evidence if danger of unfair prejudice substantially outweighs probative value).

Appellant's argument that the evidence is unduly cumulative is thinner. The recorded messages include the tone of J.K.'s voice, which cannot be fully reproduced by asking witnesses questions about what the messages said. In this respect, the recordings do not duplicate other evidence. In sum, we conclude that the district court's decision to admit the messages was not an abuse of discretion.

## IV.

The next issue raised by appellant is whether the prosecutor committed misconduct amounting to plain error by eliciting inadmissible testimony. Eliciting inadmissible testimony is prosecutorial misconduct. *State v. Ramey,* 721 N.W.2d 294, 300 (Minn.2006). Appellant argues that the prosecutor did this in three instances.

Because appellant did not object to any of these instances below, we again review for plain error. *Id.* at 302. For unobjected to instances of prosecutorial misconduct, the burden is on the appellant to prove that there was error and the error was plain. *Id.* An error is plain if it "contravenes case law, a rule, or a standard of conduct." *Id.* If appellant demonstrates that the prosecutor's conduct constitutes an error that is plain, then the burden shifts to the state to show that the misconduct did not affect substantial rights. *Id.* To show this, the state must prove "that there is no reasonable likelihood that the absence of the misconduct in question would have had a significant effect on the verdict." *Id.* (quotation omitted). "In assessing whether there is a reasonable likelihood that the absence of the misconduct would have had a significant effect on the jury's verdict, we consider the strength of the evidence against the defendant, the pervasiveness of the improper suggestions, and whether the defendant had an opportunity to (or made efforts to) rebut the improper suggestions." *State v. Davis,* 735 N.W.2d 674, 682 (Minn.2007).

### 1. *Prior police contacts*

The prosecutor questioned a Rochester police officer about his role in apprehending appellant. In one question, the prosecutor asked the officer if he knew what appellant looked like, and the officer

replied, "I've dealt with him in the past." A few questions later, the prosecutor asked the officer, "[I]f I understand correctly, you know a person named Adolph Valentine from prior contacts; is that right?" The officer replied: "That's correct." Appellant argues that eliciting testimony from a police officer that the officer knows appellant from prior contacts is prosecutorial misconduct amounting to plain error.

■ Eliciting an officer's testimony that he knows the defendant from prior contacts is error if the defendant's identity is not an issue in the case. *State v. Strommen*, 648 N.W.2d 681, 688 (Minn.2002). In *Strommen*, the court held that when the officer's testimony that he knew the defendant from prior contacts was combined with statements from another witness that the defendant had killed someone and been charged for that crime, the error in eliciting these statements was plain. *Id.* at 686–88. The court further concluded that these statements, when taken together, affected the defendant's substantial rights and that the conviction needed to be reversed to ensure the fairness and integrity of the judicial proceeding. *Id.* at 688–89. *Strommen* did not hold that the officer's comments about prior contacts, on their own, were reversible plain error. *See id.* at 686–89.

Applying *Strommen*, we agree with appellant that admission of the officer's testimony that he knew him from prior contacts was error because appellant's identity was not at issue in the case. Whether the error was plain is a closer question because, unlike in *Strommen*, the officer's statements that he knew appellant from prior contacts was not coupled with an earlier, inadmissible statement that appellant had committed a crime. But even if this was plain error, it did not affect appellant's substantial rights. Even if the officer had not testified, the jury still would have learned through B.S.'s admissible testimony that appellant had had prior contacts with the police.

Finally, the state has shown "that there is no reasonable likelihood that the absence of the misconduct in question would have had a significant effect on the verdict." *Ramey*, 721 N.W.2d at 302 (quotation omitted). The strength of the evidence against appellant was overwhelming: among other things, it included an eyewitness account of the assault, appellant's effort to evade the police shortly after the abuse occurred, numerous statements by J.K. near the time of the abuse that appellant assaulted her, and recordings of J.K. indicating the same abuse. The officer's testimony that appellant had prior contacts with the police was incidental: it only occurred in response to two questions. Given the strength of the evidence, these two brief comments do not constitute reversible plain error.

2. *Vouching testimony*

■ The prosecutor asked the following question of the first officer to arrive at the scene and received the following answer:

> Q. Given the observations you made of the injuries to [J.K.] at the time you showed up, her demeanor, and what she had told you, did you have any reason to doubt the validity of what you were being told?
>
> A: No.

Appellant argues that this was improper vouching testimony and that the prosecutor committed misconduct amounting to plain error in eliciting it.

■ The credibility of a witness is for the jury to decide, not a witness. *State v. Koskela*, 536 N.W.2d 625, 630 (Minn.1995).

In *Koskela*, the officer testified about the statement of a witness: "I had no doubt whatsoever that I was taking a truthful statement." *Id.* Although the supreme court did not explicitly hold that this testimony was error, it did raise the court's concern because the officer was testifying about the credibility of another witness. *Id.* Instead, the court bypassed the potential error question by holding that the testimony did not prejudice the appellant. *Id.* There was no prejudice in *Koskela* because the underlying statement which the officer opined was truthful was little more than corroborative. *Id.*

Here, the officer's statement appears to be improper vouching. However, because copious evidence indicated appellant assaulted J.K., the officer's statement was harmless. We conclude there is not prejudicial plain error.

### 3. The "Hitler" reference

 In questioning J.K. about her voicemail messages to B.S., this colloquy ensued:

> Q. How did you refer to the defendant, by what name?
>
> A. Probably Lord or maybe Hitler.

Appellant argues that the prosecutor committed misconduct by eliciting from J.K. that one of appellant's aliases was "Hitler." Appellant supports this argument by noting that the state has a duty to prepare its witnesses properly so that they avoid blurting out inadmissible testimony. *State v. Ray*, 659 N.W.2d 736, 745 (Minn.2003). Given the negative associations and irrelevance of the name "Hitler," the reference likely was inadmissible.

We assume without deciding that eliciting the "Hitler" reference was error. But we note the Hitler nickname was not referred to in closing argument and the evidence against the defendant was overwhelming. Given these facts, we conclude

that there is no reasonable likelihood that the absence of the misconduct in question would have had a significant effect on the verdict. *Ramey*, 721 N.W.2d at 302 (quotation omitted).

### V.

 The final issue is whether the cumulative effect of the alleged errors deprived appellant of his right to a fair trial. Even though errors individually may not warrant a new trial, in certain cases the cumulative effect of the errors may warrant reversal. *State v. Erickson*, 610 N.W.2d 335, 340–41 (Minn.2000). The test is whether the effect of the errors considered together denied appellant a fair trial. *Id.* at 340.

Here, the case against appellant is overwhelming. Moreover, of the errors asserted by appellant, only the plain errors could plausibly be errors. These errors occupy only a small portion of the trial—less than seven questions and answers. This case is not like *State v. Mayhorn*, in which the supreme court reversed because "the prosecutor's misconduct was a pervasive force at trial." 720 N.W.2d 776, 791 (Minn.2006). Finally, none of the three incidents of plain error alleged by appellant affected his substantial rights. Based on our review of the record, we conclude that the cumulative effect of any errors did not deprive appellant of the right to a free trial.

### DECISION

Because we conclude that the district court properly admitted evidence of appellant's domestic abuse against B.S. under Minn.Stat. § 634.20, and because we conclude the various other evidentiary rulings of the district court and actions of the prosecution were not error or do not meet

the plain-error standard, we affirm appellant's conviction.

**Affirmed.**