*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0938**

State of Minnesota,
Respondent,

vs.

Larry Maurice Taylor,
Appellant.

**Filed April 20, 2015
Affirmed
Smith, Judge**

Ramsey County District Court
File No. 62-CR-13-7548

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John Choi, Ramsey County Attorney, Peter R. Marker, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Suzanne M. Senecal-Hill, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Chutich, Presiding Judge; Rodenberg, Judge; and Smith, Judge.

## UNPUBLISHED OPINION

**SMITH**, Judge

We affirm appellant's convictions for pattern of stalking conduct, aggravated stalking, and terroristic threats because the district court properly admitted history-of-

relationship evidence under Minn. Stat. § 634.20 (Supp. 2013) and because appellant's pro se arguments lack merit.

**FACTS**

Appellant Larry Maurice Taylor was charged with (1) pattern of stalking conduct, (2) aggravated stalking, and (3) terroristic threats. Before trial, the state noticed its intent to introduce history-of-relationship evidence under Minn. Stat. § 634.20 regarding Taylor's past domestic abuse of a former girlfriend, D.W. Taylor moved to preclude the introduction of this evidence. Citing *State v. Valentine*, 787 N.W.2d 630 (Minn. App. 2010), *review denied* (Minn. Nov. 16, 2010), the district court allowed the state to introduce the relationship evidence under section 634.20. The district court found that the evidence was admissible and that "the probative value outweigh[ed] unfair prejudice to [Taylor]."

**D E C I S I O N**

**I.**

Taylor argues that the district court committed reversible error by admitting evidence of his prior relationship with D.W. under Minn. Stat. § 634.20. We review a district court's admission of evidence under section 634.20 for an abuse of discretion. *State v. Lindsey*, 755 N.W.2d 752, 755 (Minn. App. 2008) (citing *State v. McCoy*, 682 N.W.2d 153, 161 (Minn. 2004)), *review denied* (Minn. Oct. 29, 2008). On appeal, the appellant has the burden to show that the district court abused its discretion and that the appellant was prejudiced by the evidentiary ruling. *Id.*

2

Evidence of prior crimes or bad acts is generally not admissible to show that a person acted in conformity with prior behavior. Minn. R. Evid. 404(b). But

> [e]vidence of domestic conduct by the accused against the victim of domestic conduct, or against other family or household members, is admissible unless the probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issue, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Minn. Stat. § 634.20. "Domestic conduct" includes "evidence of domestic abuse" and evidence of the violation of an order for protection or a harassment restraining order. *Id.*

In *Valentine*, we stated that section 634.20 "unambiguously authorize[s] the admission of similar-conduct evidence against the accused's (not the victim's) family or household members." 787 N.W.2d at 637. We explained that "evidence showing how a defendant treats his family or household members, such as his former spouses or other girlfriends, sheds light on how the defendant interacts with those close to him, which in turn suggests how the defendant may interact with the victim." *Id.* As a result, we concluded that the district court did not err in admitting evidence of the appellant's abuse of another girlfriend under section 634.20. *Id.* at 638.

As in *Valentine*, the district court properly admitted evidence of Taylor's abuse of a previous girlfriend under section 634.20. *See id.* But Taylor argues that the supreme court has not yet adopted this court's interpretation of section 634.20, and that, therefore,

the district court erred by admitting the evidence.[1]  Taylor suggests that we should instead rely on *McCoy*, in which the supreme court adopted section 634.20 "as a rule of evidence for the admission of evidence of similar conduct by the accused against the alleged victim of domestic abuse."  682 N.W.2d at 161.  But *McCoy* only addressed the admissibility of evidence of prior domestic abuse between the accused and the victim. The supreme court did not address the admissibility of evidence of prior domestic abuse against someone other than the victim, which is the issue addressed in *Valentine*.  And, because the supreme court denied review, *Valentine* is binding on both this court and the district court.  *See State v. Collins*, 580 N.W.2d 36, 43 (Minn. App. 1998) (explaining that an opinion of this court has precedential effect once the deadline for granting review has expired), *review denied* (Minn. July 16, 1998).  We therefore apply *Valentine* and conclude that the district court properly admitted evidence of Taylor's relationship with D.W. under section 634.20.

Taylor also argues that the probative value of D.W.'s testimony was substantially outweighed by the danger of unfair prejudice.  Taylor again relies on *McCoy* and argues that the evidence of Taylor's prior relationship with D.W. lacked probative value because it could not illuminate the history of Taylor's relationship with A.D.  *See McCoy*, 682 N.W.2d at 159 ("[E]vidence of prior conduct between the accused and the alleged victim . . . may be offered to illuminate the history of the relationship.").  But, as we

---

[1] The supreme court recently declined to determine whether a district court erred by admitting evidence of domestic abuse against someone other than the victim under section 634.20 because the evidence did not significantly affect the verdict in the case. *See State v. Benton*, 858 N.W.2d 535, 541 (Minn. 2015).

stated in *Valentine*, evidence concerning abuse of a former spouse or girlfriend "sheds light on how the defendant interacts with those close to him, which in turn suggests how the defendant may interact with the victim." 787 N.W.2d at 637. As in many other domestic abuse cases, only A.D. could testify to the events that occurred between her and Taylor in their homes. *See McCoy*, 682 N.W.2d at 161 (explaining that domestic abuse generally occurs "in the privacy of the home," goes underreported, and lacks eyewitness testimony). D.W.'s testimony therefore provided a context for the relationship between A.D. and Taylor, and had significant probative value. *See Lindsey*, 755 N.W.2d at 756 ("Evidence that helps to establish the relationship between the victim and the defendant or which places the event in context bolsters its probative value." (quotation omitted)). The testimony also assisted the jury in assessing A.D.'s credibility. *See id.* at 757.

Even though D.W.'s testimony created a danger of prejudice to Taylor, it did not persuade the jury by illegitimate means or give the state an unfair advantage. *See State v. Bell*, 719 N.W.2d 635, 641 (Minn. 2006) ("[U]nfair prejudice is not merely damaging evidence, even severely damaging evidence; rather, unfair prejudice is evidence that persuades by illegitimate means, giving one party an unfair advantage." (quotation omitted)). Taylor had notice before trial that the state intended to introduce history-of-relationship evidence under section 634.20. In addition, D.W.'s testimony was limited to the incident in which Taylor choked her and his subsequent phone calls in violation of the no-contact order. Finally, the district court twice gave the jury a cautionary instruction that D.W.'s testimony was "being offered for the limited purpose of demonstrating the nature and the extent of the relationship between [Taylor and A.D.]" and that the jury

must not convict Taylor based on his previous conduct toward D.W. We presume that the jury followed the district court's cautionary instructions. *State v. Miller*, 573 N.W.2d 661, 675 (Minn. 1998).[2] Contrary to Taylor's assertion, no evidence suggests that the cautionary instructions were confusing to the jury, and Taylor did not object to the instructions at trial. The district court's cautionary instructions lessened any danger of unfair prejudice to Taylor. *See State v. Waino*, 611 N.W.2d 575, 579 (Minn. App. 2000) (stating that the prejudicial effect of prior-relationship evidence "is mitigated by the [district] court's cautionary instruction to the jury").

We conclude that the district court did not err in admitting D.W.'s testimony under section 634.20 and in concluding that the probative value of the testimony outweighed the danger of unfair prejudice to Taylor. In addition, there is no evidence that D.W.'s testimony significantly affected the verdict. *See Benton*, 858 N.W.2d at 541. Even though the prosecutor compared the testimonies of A.D. and D.W. in his closing argument, he repeated the district court's cautionary instructions regarding the purpose of D.W.'s testimony. The prosecutor did not discuss D.W.'s testimony as "propensity evidence," as Taylor suggests. Because both the district court and the prosecutor cautioned the jury regarding the purpose of D.W.'s testimony and because other evidence (including A.D.'s testimony and the text-message exhibits) provided sufficient evidence of Taylor's guilt, the relationship evidence did not significantly affect the verdict. *See id.*

---

[2] Taylor cites previous caselaw doubting the jury's ability to follow cautionary instructions. *See State v. Caldwell*, 322 N.W.2d 574, 590-91 (Minn. 1982). But "doubts about instructions have not held sway," and we now presume that jurors follow instructions. *State v. McCurry*, 770 N.W.2d 553, 558-59 (Minn. App. 2009), *review denied* (Minn. Oct. 28, 2009).

6

at 542 (concluding that the relationship evidence did not significantly affect the verdict when the prosecutor "made sparse use of the relationship evidence in closing argument," the prosecutor and district court provided several cautionary instructions regarding the purpose of the evidence, and the other evidence of guilt was overwhelming).

**II.**

Taylor also raises several arguments in his pro se supplemental brief. Even though Taylor fails to cite legal authority, we will briefly discuss the merits of his arguments.

Taylor first argues that his trial attorney was ineffective. In making this argument, Taylor cites facts that are not in the record. Because we do not have the record to review Taylor's argument, we decline to consider it. *See State v. Alvarez*, 820 N.W.2d 601, 626 (Minn. App. 2012) ("[A]n ineffective-assistance-of-counsel claim should typically be raised by a postconviction petition for relief."), *aff'd sub. nom. State v. Castillo-Alvarez*, 836 N.W.2d 527 (Minn. 2013).

Taylor also argues that the district court erred in allowing reference to his gang membership. Before trial, the district court stated that it was "concerned" about references to gang membership, but would not preclude reference to Taylor's statements in his text messages to A.D. that he was in a gang. The district court explained that the statements were not being introduced to establish that Taylor was in a gang, but were relevant to show "how the statements were meant to have been perceived" and "how they were in fact perceived by [A.D.]" Taylor is correct that the references to his gang membership created a danger of prejudice to him. But the state was required to prove that Taylor intended to or had reason to know that he would cause A.D. to feel threatened

7

or terrorized and that A.D. actually felt that way. *See* 10 *Minnesota Practice*, CRIMJIG 13.56 (2006) (stalking); 10 *Minnesota Practice*, CRIMJIG 13.58 (2006) (pattern of stalking conduct); 10 *Minnesota Practice*, CRIMJIG 13.107 (2006) (terroristic threat). Taylor's text-message references to his gang membership were therefore relevant to the elements of the three charges, and the district court did not abuse its discretion in allowing reference to Taylor's gang membership. *See State v. Amos*, 658 N.W.2d 201, 203 (Minn. 2003) ("Evidentiary rulings rest within the sound discretion of the [district] court and will not be reversed absent a clear abuse of discretion.").

Finally, Taylor appears to suggest that the evidence was insufficient to convict him of pattern of stalking conduct because he and A.D. lived together and "were together until the day of [his] arrest." But a pattern of stalking conduct can be proven by showing two or more acts of domestic assault or terroristic threats within five years, Minn. Stat. § 609.749, subd. 5(b) (2012), and domestic assault is committed against a family or household member, Minn. Stat. § 609.2242, subd. 1 (2012). Contrary to Taylor's assertion, the evidence that Taylor and A.D. lived together as a couple supports Taylor's conviction for pattern of stalking conduct.

**Affirmed.**