*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0164**

State of Minnesota,
Respondent,

vs.

Derrick Marquette Rowan,
Appellant.

**Filed December 14, 2015
Affirmed
Harten, Judge***

St. Louis County District Court
File No. 69DU-CR-14-2076

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Mark S. Rubin, St. Louis County Attorney, Rebekka L. Stumme, Assistant County
Attorney, Duluth, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Jennifer Workman Jesness,
Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Connolly, Presiding Judge; Johnson, Judge; and Harten,

Judge.

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to
Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**HARTEN**, Judge

Appellant challenges his conviction of felony domestic assault, arguing that the district court abused its discretion in admitting evidence of his relationship with the victim and expert testimony regarding domestic abuse victims. Because we see no abuse of discretion, we affirm.

## FACTS

In 2014, appellant Derrick Rowan and R.D. were in a romantic relationship. Two incidents that year preceded the incident giving rise to this appeal: in March, appellant hit R.D., leading to a conviction, and in early June, he punched her in the stomach.

On 23 June 2014, appellant and R.D. had an altercation on the street. When police officers tried to separate them, appellant slapped an officer's hand away and was pushed to the ground. On 24 June 2014, R.D. was interviewed by a police officer whom she told that appellant had intimidated her the previous day. Appellant was charged with felony domestic assault, disorderly conduct, and obstructing legal process.

In September 2014, at his jury trial, R.D. testified that she was not afraid of appellant during their altercation on 23 June 2014. The state introduced witnesses who testified about that incident, and a domestic abuse expert testified about typical victim behavior in domestic abuse cases. The jury found appellant guilty on all three counts.

He was sentenced to the presumptive 24 months in prison on felony domestic assault, 90 days, concurrent, on disorderly conduct, and 180 days, concurrent, on obstructing legal process. He challenges his conviction, arguing that the district court abused its discretion in

2

admitting both evidence of appellant's relationship with R.D. and expert witness testimony on the typical behavior of domestic abuse victims.

## D E C I S I O N

**Standard of Review**

"Evidentiary rulings rest within the sound discretion of the [district] court and will not be reversed absent a clear abuse of discretion. On appeal, the appellant has the burden of establishing that the [district] court abused its discretion and that appellant was thereby prejudiced." *State v. Amos*, 658 N.W.2d 201, 203 (Minn. 2003) (citation omitted).

**1.     Relationship Evidence**

"Evidence of domestic [abuse] by the accused against . . . household members . . . is admissible unless the probative value is substantially outweighed by the danger of unfair prejudice . . . ." Minn. Stat. § 634.20 (Supp. 2013). Someone who has been in a romantic relationship with the accused is designated a "household member." Minn. Stat. § 518B.01, subd. 2(b)(7) (2012). "Relationship evidence is admissible under section 634.20 if (1) it demonstrates similar conduct by the accused; (2) the conduct is perpetrated against the victim of domestic abuse or against another family or household member; and (3) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice." *State v. Barnslater*, 786 N.W.2d 646, 651 (Minn. App. 2010), *review denied* (Minn. Oct. 27, 2010). "[In this statute], the legislature has expressed an intent to remove evidence of 'similar prior conduct' in domestic abuse (non-homicide) prosecutions from the 'clear and convincing' standard of [Minn. R. Evid.] 404(b)." *State v. McCoy*, 682 N.W.2d 153, 158 (Minn. 2004).

R.D. testified that, on 23 June 2014, appellant was mad and was yelling at her, that appellant did nothing when she tried to walk away and a police officer told him to leave R.D. alone, and that appellant ended up in jail. She also testified that she told the officer who interviewed her about the 23 June incident that she had not been scared, that this was not the first time appellant had hurt her, and that appellant had slapped her.

The district court then instructed the jury that the state was introducing appellant's conduct on other occasions "for the limited purpose of demonstrating the nature and extent of the relationship between [appellant] and [R.D.] in order to assist you in determining whether [appellant] committed the acts with which [he] is charged in this complaint." The district court also told the jury that appellant was "not being tried for and [could] not be convicted of any behavior other than the charged offenses from June 23rd" and that the jury was "not to convict [him] on the basis of conduct on any other occasions because to do so might result in unjust double punishment."

R.D. testified further that, on a prior occasion, appellant had hit her twice in the face and given her a black eye, but that she was not scared of him and that law enforcement had been called a couple of times because appellant had hit her. She answered "No" when asked if, on 23 June, appellant had hit her, slapped her, or come close to hitting or slapping her; if he often spoke loudly to her and said he was going to kill her or hurt her in some way; and if she was afraid of what he was going to do or of any assault when he was yelling at her. Thus, the jury heard R.D.'s version of her relationship with appellant.

Evidence of appellant's prior abuse of R.D. was admitted to enable the jury to hear another version of their relationship. Such evidence is "particularly important [when, as

4

here, the defendant] exercised his right not to testify and [the victim's] testimony contradicted her earlier statements to investigators." *State v. Lindsey*, 755 N.W.2d 752, 757 (Minn. App. 2008), *review denied* (Minn. Oct. 29, 2008). "Evidence that helps to establish the relationship between the victim and the defendant or which places the event in context bolsters its probative value." *Id*. at 756.

Appellant argues that the admission of the evidence was an abuse of discretion on three grounds. First, he argues that the evidence "was not probative because it persuaded the jury by illegitimate means that appellant intended to cause fear of bodily harm to R.D. in the current case because he had beaten her in the past." This argument ignores the fact that appellant's prior beating of R.D. was itself likely to cause her to fear bodily harm from him.

Second, appellant asserts that the evidence of prior conduct "illegitimate[ly]" caused the jury to focus on prior incidents where appellant had actually inflicted bodily harm on R.D. instead of on this incident, where he merely caused her to fear bodily harm. But in this incident, police officers were present and prevented appellant from inflicting bodily harm. The officers' testimony about their role in the altercation would have differentiated this incident from prior incidents for the jury.

Third, appellant argues that the evidence of his previous assaults of R.D. was impermissible character evidence "portraying [him] as a violent person with a history of beating R.D." That argument was addressed in *State v. Bauer*, 598 N.W.2d 352, 365 (Minn. 1999) (concluding that "disputed evidence was otherwise admissible as tending to show a strained relationship between [the] appellant and [the victim]").

5

> Character evidence which tends to show the strained relationship between the accused and the victim is relevant to establishing motive and intent and is therefore admissible.
>
> . . . .
>
> . . . We recognize that some of the relationship evidence introduced by the state did concern prior acts by appellant that, if true, would tend to show that appellant committed past crimes. This included evidence that appellant had previously threatened and abused [the victim] . . . . [W]here relevant to show a strained relationship, however, evidence of past abuse of or threats against the victim or her family by the defendant has generally been deemed admissible against . . . challenges [based on Minn. R. Evid. 404(b) (prohibiting the admission of evidence of "another crime, wrong, or act" to prove the character of a defendant "in order to show action in conformity therewith")].

*Id.* at 364-65 (quotation omitted). The same is true here.

The district court did not abuse its discretion in admitting evidence of appellant's prior relationship with R.D.

**2.     Expert Witness Evidence**

The testimony of an expert witness is admissible if the witness's "specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." Minn. R. Evid. 702. The evidence must be relevant and helpful to the trier of fact, and its prejudicial effect must not substantially outweigh its probative value. *State v. Valentine*, 787 N.W.2d 630, 638 (Minn. App. 2010), *review denied* (Minn. Nov. 16, 2010). Appellant argues that the district court abused its discretion in admitting the testimony of an expert on domestic abuse because the testimony "was not relevant" and "likely misled the [jurors] by making them focus upon [R.D.'s] behaviors as opposed to appellant's."

But the expert's testimony here would have helped the jury understand R.D.'s testimony, which was contradictory: e.g., appellant abused her, yet she continued their relationship; appellant did not frighten her, yet she told an officer she was intimidated by appellant. The expert explained why domestic abuse victims minimize what has happened to them:

> [Abusers] say, you are worthless, you are stupid, no one else will ever want you. You are not a victim. You hit me back last time. They say it so many times and demean victims, victims actually take on the thinking as their own. . . .
>
> Also, there is this element of love, also, and they don't want to have to often admit that the person I love does this to me. They will also minimize it for that reason . . . .

When asked if it is common for victims to return to their abusers, she answered, "Yes, it's very, very common," and explained:

> There are a number of reasons for that. A lot of people's faith. Their faith says that when you enter into a formal relationship, for example, like marriage, . . . you don't leave. Fear . . . actually increases after someone does leave, so it's actually more dangerous when someone leaves and a lot of victims just know that intuitively.
>
> Family . . . you not only lose your partner, but . . . other family members. Financially, how you depend on your partner financially is a real big aspect. Most abusers are also controlling the money and resources . . . . There [are] also feelings . . . . You do have feelings for this person . . . .

Thus, the expert explained why R.D. would have given contradictory and therefore not credible testimony.

In the related context of battered-women syndrome, expert testimony is admissible under Minn. R. Evid. 702 if it helps the jury to "understand behavior that might otherwise

7

undermine . . . credibility." *State v. Grecinger*, 569 N.W.2d 189, 196 (Minn. 1997); *see also Valentine*, 787 N.W.2d at 639 (citing *Grecinger* and noting that expert testimony is admissible "to explain a victim's counterintuitive behavior and exculpatory account of an incident, provided that the expert testimony is limited to describing the syndrome and its characteristics and the expert does not offer an opinion as to whether the victim actually suffers from the syndrome"). Here, the district court told the jury explicitly that the expert witness was testifying to help them "understand the dynamics of a relationship in a domestic violence context" and was "not testifying about anything that happened in this particular case."

Finally, appellant asserts that the jury did not need help in understanding R.D.'s testimony because "she was a competent witness who was in the best position to testify about the offense and her behavior." But R.D.'s testimony was contradictory; understanding her account of what appellant did to her required an expert's explanation of the domestic abuse context. The district court did not abuse its discretion in admitting expert evidence on domestic abuse.

**Affirmed**.