*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1662**

State of Minnesota,
Respondent,

vs.

Frederick Raymond Couch,
Appellant.

**Filed December 19, 2016
Affirmed
Jesson, Judge**

Hennepin County District Court
File No. 27-CR-14-27906

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Michael Richardson, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Suzanne M. Senecal-Hill, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Ross, Presiding Judge; Schellhas, Judge; and Jesson, Judge.

UNPUBLISHED OPINION

**JESSON**, Judge

Appellant Frederick Raymond Couch argues that the district court committed reversible error by admitting evidence of his relationship with a former girlfriend and that the district court erred when it entered convictions and imposed sentences on counts of both third-degree criminal sexual conduct and a pattern-of-stalking conduct. Because the district court did not abuse its discretion in admitting the relationship evidence under Minnesota Statutes section 634.20 (2014) and because third-degree criminal sexual conduct is not a lesser-included offense of a pattern-of-stalking conduct, we affirm.

## FACTS

In August 2014, the victim, J.A., moved from Texas to Minnesota, where she lived with her three children, mother, aunt, uncle, and grandfather. Shortly thereafter, J.A. met appellant Frederick Raymond Couch online, and the two began dating. During the relationship, they texted each other daily, met at J.A.'s house, discussed "normal, everyday things," and had sex. Couch mainly visited J.A. at her house, and they did not do much outside of his visits. J.A. considered him a boyfriend.

The relationship was short-lived. After a month, J.A. tried to end the relationship after her uncle expressed concerns about Couch. Despite her attempt to end contact with him, Couch continued calling and texting J.A., as well as driving by her house.

On September 4, 2014, Couch knocked on J.A.'s bedroom window, asking her to bring him food. She brought him food outside, but he did not like it and flipped the plate into J.A.'s face. Couch began walking away, but he turned around and hit J.A. in the face

with his fist. After an ensuing argument, he put his hands down J.A.'s pants and digitally penetrated her. As J.A. turned to go inside her house, Couch grabbed her from behind, picked her up, and choked her, telling her he wanted to have sex outside. J.A. testified that she told him she did not want to have sex, but then did have sex with Couch because "he was gonna [sic] make good on his threats."

That evening, J.A.'s mother called the police because she heard a commotion and saw red marks across J.A.'s face. The police arrived shortly after the call. J.A. told the police that Couch punched and choked her. But she did not tell the police about the sexual conduct because she did not want her mother to hear about it. Later that night, Couch threatened to return to the house and burn it down; the police were called again. The next day, J.A. obtained an order for protection against Couch. Despite the order, Couch continued to communicate with J.A.

On September 19, Couch knocked on J.A.'s bedroom window and requested that she come outside. J.A.'s mother called the police and Couch was arrested. At that point, J.A. told police that Couch raped her on September 4. Couch was charged by amended complaint with third-degree criminal sexual conduct, stalking, pattern-of-stalking conduct, domestic assault by strangulation, and domestic assault.

At trial, over defense counsel's objection, the district court admitted evidence of Couch's previous domestic conduct in a relationship he had with H.M.[1] Couch and H.M.'s relationship was also short-lived. H.M. met Couch online and they dated for a few weeks

---

[1] The district court also gave limiting instructions before the evidence was presented and in jury instructions.

in June 2014. H.M. thought that Couch was nice and considered him a boyfriend. They spent time at her home, as well as Couch's sister's house. They had sex at her home.

H.M. testified that when Couch was drinking, he was often rude and angry. He hit her in the face with an open hand. A few days later, Couch returned, again hit H.M. with his open hand and, as she fell on the bed, held her down and sexually penetrated her against her will. Four days later he returned, forced his way into her apartment, and choked her. He left and slashed her car tires.

Couch did not testify at trial. He was found guilty of all charges and sentenced to 135 months in prison on the conviction of third-degree criminal sexual conduct and 43 months on the conviction of a pattern-of-stalking conduct, to be served concurrently. This appeal follows.

## D E C I S I O N

### I. The district court properly admitted evidence of Couch's abuse of H.M. as relationship evidence under Minnesota Statutes section 634.20.

Couch challenges the district court's admission of H.M's testimony as relationship evidence under Minnesota Statutes section 634.20. Under that statute, the district court may admit "[e]vidence of domestic conduct by the accused against the victim of domestic conduct, or against other family or household members," provided that certain conditions are met. Minn. Stat. § 634.20. Relationship evidence is relevant because it assists in illuminating the history of the relationship between the defendant and the victim, and it may also help to prove motive or help the jury to assess witness credibility. *State v.*

*Matthews*, 779 N.W.2d 543, 549 (Minn. 2010).[2] Thus, such evidence is admissible if its probative value is not substantially outweighed by the danger of unfair prejudice against the defendant, confusing the issue, misleading the jury, undue delay, or the unnecessary presentation of cumulative evidence. Minn. Stat. § 634.20.

Evidentiary rulings generally rest within the district court's discretion, and this court will not reverse a district court's decision on the admission of evidence absent an abuse of that discretion. *State v. Amos*, 658 N.W.2d 201, 203 (Minn. 2003). This rule applies to the admission of relationship evidence. *Matthews*, 779 N.W.2d at 553. If the district court erroneously admits evidence, an appellate court will nonetheless affirm unless the appellant establishes prejudice from the abuse of discretion, which occurs if there is a reasonable possibility that the wrongfully admitted evidence significantly affected the verdict. *State v. O'Meara*, 755 N.W.2d 29, 35 (Minn. App. 2008). This court, however, reviews matters of statutory construction de novo. *State v. Barnslater*, 786 N.W.2d 646, 650 (Minn. App. 2010), *review denied* (Minn. Oct. 27, 2010).

### A. H.M. qualifies as a family or household member under Minnesota Statutes section 634.20.

Couch argues that the district court erred by admitting evidence of H.M.'s abuse because she does not qualify as his "family or household member," as their relationship

---

[2] Relationship evidence is treated differently from evidence of other crimes or bad acts, which is addressed under Minnesota Rule of Evidence 404(b). Other-crimes evidence is not admissible to prove that a defendant acted in conformity with his character, but it may be admissible for other purposes, such as to prove motive, intent, plan, knowledge, identity, or absence of mistake or accident. Minn. R. Evid. 404(b); *State v. Spreigl*, 272 Minn. 488, 490-91, 139 N.W.2d 167, 169 (1965). Section 634.20 "allows much more latitude" than the exceptions in rule 404(b). *State v. Word*, 755 N.W.2d 776, 784 (Minn. App. 2008).

was not significant. A family or household member includes a "person involved in a significant romantic or sexual relationship." Minn. Stat. § 634.20; Minn. Stat. § 518B.01, subd. 2(b)(7) (2014). To determine whether there is a significant relationship, courts may consider the following: length of time of the relationship, type of relationship, frequency of interaction between parties, and the length of time since termination (if terminated).[3] Minn. Stat. § 518B.01, subd. 2(b).

Couch and H.M. had a two-week relationship where they talked, texted, saw each other on several occasions in different locations, and had sexual intercourse an unspecified number of times. H.M. thought of Couch as her boyfriend. Couch argues that his relationship with H.M. could not be called significant because the relationship only lasted two weeks, they mostly visited at H.M.'s apartment, and only occasionally had sex. There is no evidence that their feelings were deep enough to qualify as love, Couch contends, and a short-lived sexual relationship should not qualify as significant.

But when determining whether a relationship is significant, we need not ascertain whether the parties loved each other. Rather, we look at the frequency of interaction and length and type of relationship. We also consider the length of time since termination. Here, given the sexual nature of the relationship and the fact that H.M. considered Couch her boyfriend, the relationship was intimate. And the pair saw each other frequently, albeit

---

[3] Couch does not argue that the district court failed to consider the four statutory factors to determine whether the former relationship qualifies as a significant romantic or sexual relationship. *Cf. Sperle v. Orth*, 763 N.W.2d 670, 675 (Minn. App. 2009) (requiring a district court to consider the statutory factors to determine whether a relationship is significant under the Domestic Abuse Act when issuing orders for protection).

over a short period of time. Finally, there was less than two months between the termination of the relationship with H.M. and the relationship with J.A and less than one year between H.M.'s relationship with Couch and her testimony at trial.

In *State v. Valentine*, we allowed evidence of domestic abuse by the defendant against his other girlfriend. We did so because evidence showing how a defendant treats his family or household members, including other girlfriends, "sheds light on how the defendant interacts with those close to him, which in turn suggests how the defendant may interact with the victim." 787 N.W.2d 630, 637 (Minn. App. 2010), *review denied* (Minn. Nov. 16, 2010). To hold a relationship with a former girlfriend, H.M., to a higher standard in terms of the frequency of interaction and length and type of relationship than his relationship with J.A.—when the two relationships were strikingly similar—would defeat the goal of relationship evidence: to shed light on how the defendant interacts with those close to him.

The district court did not err by concluding that evidence of H.M.'s prior abuse was relationship evidence with respect to Couch's abuse of J.A.

### B. *The district court did not abuse its discretion in concluding that the probative value of the evidence was not outweighed by its unfair prejudice.*

Couch argues that even if evidence concerning H.M.'s abuse qualifies as relationship evidence, it was improperly admitted because its probative value was outweighed by its prejudicial effect. A prejudicial effect refers to unfair prejudice, not merely damaging evidence or even severely damaging evidence. *State v. Meyer*, 749

N.W.2d 844, 849 (Minn. App. 2008). Rather, unfairly prejudicial evidence gives one party an unfair advantage because it persuades by illegitimate means. *Id.*

Couch argues that the state did not need the evidence. The state's need for relationship evidence "is naturally considered as part of the assessment of [its] probative value versus [its] prejudicial effect." *Id.* (quotation omitted). Couch points out that the rationale for admitting relationship evidence stems from the concern that domestic abuse cases often are difficult to prosecute due to the private nature of the actions and the abuser's assertion of control. This concern is not present here, he contends, because J.A. was not a reluctant witness.

J.A. testified, as did her mother, her aunt and uncle, and the investigating police officer. But the abuse did occur in private. And while J.A.'s mother called the police when she saw a red and purple mark across J.A.'s face, J.A. did not tell the police about the nonconsensual sex until 15 days after the initial police interview. J.A. was questioned on cross-examination about her failure to immediately report the sexual conduct to the police that evening. And in closing arguments, Couch's attorney strongly argued that the criminal sexual conduct was not proved, pointing to the lack of physical evidence. The relationship evidence of conduct against H.M. could have assisted the jury in weighing the credibility of J.A.'s allegations, particularly given the delayed reporting and lack of a sexual assault examination.

Whether this probative value is outweighed by any prejudicial effect is a closer issue. But we review only for an abuse of discretion, not to see whether we would reach a different result. In this case, the prejudicial effect of the relationship evidence was lessened

8

because the district court twice gave cautionary instructions to the jury. Those instructions informed the jury that the evidence was being submitted for the limited purpose of assisting the jury to determine whether Couch committed the charged offense, it was to be used to demonstrate the nature and extent of his relationship with H.M., the jury was not to convict Couch of any other offense, and it was not to convict him on the basis of any occurrence against H.M.[4] *See State v. Lindsey*, 755 N.W.2d 752, 757 (Minn. App. 2008) (stating that cautionary instructions lessened the probability that the jury would give undue weight to relationship evidence), *review denied* (Minn. Oct. 29, 2008); *see also State v. Ferguson*, 581 N.W.2d 824, 833 (Minn. 1998) (stating that this court assumes that a jury follows the district court's instructions). Furthermore, in its closing argument, the state's reference to the relationship evidence was very brief and reminded the jury not to convict Couch based on his actions against H.M.[5]

We conclude that, on this record, the probative value of the relationship evidence is high because it "sheds light on how the defendant interacts with those close to him, which in turn suggests how the defendant may interact with the victim." *Valentine*, 787 N.W.2d at 637. And given the district court's cautionary instructions, the danger of unfair prejudice

---

[4] These instructions follow the appropriate pattern jury instructions when a party introduces relationship evidence under section 634.20. *See* 10 *Minnesota Practice* CRIMJIG 2.07 (2015).

[5] We would be more concerned about potential prejudice from this relationship evidence if Couch's abuse of H.M. were more frequent or more violent than that involving J.A. That was not the case here. The situations were remarkably similar.

is reduced.  Accordingly, the district court properly exercised its discretion by admitting the relationship evidence.

**II.**     **The district court did not commit reversible error when it imposed sentences on both the criminal sexual conduct and the pattern-of-stalking convictions because the former is not a lesser-included offense of the latter.**

The district court entered convictions on Couch's third-degree criminal sexual conduct offense and his pattern-of-stalking-conduct offense and sentenced him to concurrent sentences of 135 months on his conviction of third-degree criminal sexual conduct and 43 months on his conviction of a pattern-of-stalking conduct.  The sentences are to be served concurrently.  Couch argues that this amounts to error because third-degree sexual conduct is a lesser included offense of pattern-of-stalking conduct.  There were no objections on this ground at sentencing.  But this court may correct an illegal sentence at any time.  Minn. R. Crim. P. 27.03, subd. 9.

In Minnesota, a person may only be convicted of "either the crime charged or an included offense, but not both."  Minn. Stat. § 609.04, subd. 1 (2014).  The legislature has defined a lesser-included offense as:

> 1) A lesser degree of the same crime; or
> 2) An attempt to commit the crime charged; or
> 3) An attempt to commit a lesser degree of the same crime; or
> 4) A crime necessarily proved if the crime charged were proved; or
> 5) A petty misdemeanor necessarily proved if the misdemeanor charge were proved.

*Id.*

Criminal sexual conduct is not a lesser degree of pattern-of-stalking conduct.  *See* Minn. Stat. § 609.749, subd. 5.  There is no crime for an "attempt" to commit a pattern-of-

stalking conduct. *See id.*; Minn. Stat. § 609.17 (2014) (explaining that whoever intends to commit a crime and does an act, which is a substantial step toward the commission of that crime, is guilty of an attempt to commit that crime). Nor is there a corresponding petty misdemeanor, *compare* Minn. Stat. § 609.02, subd. 4a (2014) (defining a petty misdemeanor as an offense prohibited by statute, which does not constitute a crime and for which a sentence of a fine not more than $300 may be imposed), *with* Minn. Stat. § 609.749, subd. 5 (making a pattern-of-stalking-conduct conviction a felony). Therefore, third-degree criminal sexual conduct will only be a lesser-included offense if it is "necessarily proved" when a pattern-of-stalking conduct is proved. Minn. Stat. § 609.04, subd. 1(4).

To determine whether one offense is necessarily proved by another, the court must look at statutory definitions, not the facts of the particular case. *State v. Gisege*, 561 N.W.2d 152, 156 (Minn. 1997); *State v. Gayles*, 327 N.W.2d 1, 3 (Minn. 1982).[6] A person is guilty of a pattern-of-stalking conduct if he or she engages in two or more criminal acts within a five-year period, toward a single victim or members of a single household, which the actor knows or has reason to know would cause the victim to feel terrorized or fear bodily harm, and the conduct causes this reaction. Minn. Stat. § 609.749, subd. 5(a). The state need not prove each criminal act beyond a reasonable doubt for the act to constitute an act for a pattern-of-stalking-conduct conviction. *See id.*, subd. 5(b) (the state must show

---

[6] We note that this analysis differs from the single-behavioral-incident determination under Minnesota Statute 609.035 (2014), which is based on the particular facts of the case. Here, Couch does not argue that the district court erred in sentencing because his conduct constituted a single behavioral incident.

that a defendant did "violate or attempt to violate" the enumerated offenses to constitute a criminal act under this statute). In contrast, to be convicted of third-degree criminal sexual conduct, there must be intentional sexual penetration through use of force or coercion. Minn. Stat. § 609.344, subd. 1(c) (2014). Consequently, because intentional sexual penetration is not "necessarily proved" when a pattern-of-stalking conduct is proved, criminal sexual conduct in the third degree is not a lesser-included offense of pattern-of-stalking conduct. The district court's imposition of concurrent sentences for the two convictions was within the court's discretion.

**Affirmed.**