*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1467**

State of Minnesota,
Respondent,

vs.

Jeremiah Thomas Lord,
Appellant.

**Filed July 27, 2015
Affirmed
Reilly, Judge**

Stearns County District Court
File No. 73-CR-14-1128

Lori Swanson, Attorney General, Karen B. Andrews, Assistant Attorney General, St. Paul, Minnesota; and

Janelle Kendall, Stearns County Attorney, St. Cloud, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Davi E. Axelson, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Hooten, Presiding Judge; Halbrooks, Judge; and Reilly, Judge.

**U N P U B L I S H E D   O P I N I O N**

**REILLY**, Judge

Appellant challenges his conviction of domestic assault by strangulation, arguing that the district court erred by admitting relationship evidence. Appellant also claims that

the prosecutor committed misconduct by eliciting testimony regarding past verbal abuse. We affirm.

**FACTS**

Appellant Jeremiah Lord and J.B. dated sporadically between May 2012 and December 2013 and have two children together. Between December 2013 and February 2014, J.B. and appellant lived together in St. Cloud, Minnesota. J.B. described the couple's relationship as "stressful" and testified that they "fought all the time" and that some of their fights were physical. J.B. described one sexual encounter in which J.B. claims that appellant "was intoxicated [and] he would keep going and going and I would eventually get sore and hurt and be crying and begging him to stop and he wouldn't stop until he was done." Appellant acknowledged that there were "intense verbal arguments" but denied physically or sexually assaulting J.B.

On February 8 at approximately 1:40 a.m., appellant and J.B. got into an argument in the couple's living room. Appellant began yelling at J.B. and backed her into a corner, where he pushed her head into the wall using the palm of his hand. J.B. ran through the kitchen and tried to call a crisis hotline from her cell phone. Appellant "ripped" the cell phone out of J.B.'s hand and threw it at her. J.B. began dialing 911 and appellant "came charging" at her. J.B. closed the phone and held it against her chest, and appellant began "tackling" her for the phone. J.B. turned onto her stomach and appellant sat on her, with his legs squeezing her torso. Appellant put his hands on J.B.'s neck and pulled her head and neck back into an arched position. J.B. could not breathe when appellant placed his hands around her neck.

2

J.B. threw her phone down the hallway and appellant jumped off of her to get the phone. J.B. went to the closet to get her jacket and appellant pushed her forehead with the palm of his hand, causing her to strike her head on the closet door. J.B. dropped to her knees and appellant pushed her against the wall, where she struck her head, started seeing yellow spots, and had difficulty breathing. Appellant tackled J.B. to the floor and tried to prevent her from leaving. J.B. eventually left the apartment and called the police from a nearby gas station. The responding police officers noticed that J.B.'s eyes were red, she appeared to have been crying, and had a bump on the left side of her head behind her left ear, along with scratches on her face and arms. J.B. also told the officer that she was having a hard time swallowing. Police officers went to the couple's apartment, spoke with appellant, and ultimately arrested him for domestic assault.

The state charged appellant with one count of felony domestic assault by strangulation in violation of Minn. Stat. § 609.2247, subd. 1 (2012). Appellant pleaded not guilty and a jury trial was held. The jury found appellant guilty of domestic assault by strangulation. The district court sentenced appellant to 18 months in the custody of the commissioner of corrections but stayed execution of the sentence for a five-year period. This appeal followed.

**D E C I S I O N**

Appellant raises two arguments: first, that the district court erred by allowing the state to introduce relationship evidence under Minn. Stat. § 634.20 (2012) and second, that the prosecutor committed misconduct by eliciting testimony from J.B. about an

3

earlier hospitalization in disregard of the district court's ruling that such evidence was inadmissible. We address each argument in turn.

## I.

Appellant first challenges the district court's admission of relationship evidence under Minn. Stat. § 634.20. We review a district court's decision to admit relationship evidence for an abuse of discretion. *State v. Lindsey*, 755 N.W.2d 752, 755 (Minn. App. 2008), *review denied* (Minn. Oct. 29, 2008). Appellant bears the burden of establishing that the district court abused its discretion and that he was prejudiced. *Id.*

"Evidence of another crime, wrong, or act is not admissible to prove the character of a person in order to show action in conformity therewith." Minn. R. Evid. 404(b). But relationship evidence is distinct from rule 404(b) bad-acts evidence because it evinces "prior conduct between the accused and the alleged victim and may be offered to illuminate the history of the relationship, that is, to put the crime charged in the context of the relationship between the two." *State v. McCoy*, 682 N.W.2d 153, 159 (Minn. 2004). A defendant is presumed to be aware that his prior relationship with the victim, "particularly in so far as it involves ill will or quarrels," may be offered against him at trial. *Id.* at 159-60 (quotation omitted).

In the context of a domestic assault case, evidence of domestic conduct by the accused against the victim of domestic conduct is admissible. Minn. Stat. § 634.20. Evidence is admissible under section 634.20 if (1) it is domestic conduct by the accused, (2) it is perpetrated against the victim of domestic abuse or against another family or household member, and (3) the probative value of the evidence is not "substantially

4

outweighed by the danger of unfair prejudice, confusion of the issue, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *Id.*; *State v. Meyer*, 749 N.W.2d 844, 849 (Minn. App. 2008).

Before trial, the state moved to introduce relationship evidence of past physical incidents between appellant and J.B., including the sexual assault. The district court determined that the physical incidents between appellant and J.B. met the definition of "domestic abuse" contemplated in section 634.20 and were therefore admissible. However, the district court clarified that it could "limit the amount of testimony regarding this incident if . . . too much emphasis is being placed on [it]." Appellant does not argue that the behavior qualifies as "domestic conduct," nor does he argue that the conduct was perpetrated against a family or household member. Appellant's only challenge on appeal is whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice.

"When balancing the probative value against the potential prejudice, unfair prejudice is not merely damaging evidence, even severely damaging evidence; rather, unfair prejudice is evidence that persuades by illegitimate means, giving one party an unfair advantage." *Lindsey*, 755 N.W.2d at 757. Here, the district court considered this issue and found that, "for the purpose of illuminating the relationship between [appellant] and [J.B.] and to put the alleged crime within the context of that relationship," a brief description of the previous physical and sexual incidents was "highly probative" and was not substantially outweighed by the danger of unfair prejudice. *See State v. Waukazo*, 374 N.W.2d 563, 565 (Minn. App. 1985) (determining court acted within its discretion in

5

admitting relationship evidence to "illuminate" the relationship and place the charged assault in the "proper context"), *review denied* (Minn. Nov. 1, 1985). The district court reiterated that it would limit such evidence to a "brief description" of appellant's conduct in order to minimize any possible unfair prejudice or confusion of the issue and in the interest of judicial economy. The district court's determination is amply supported by our previous decisions. *See, e.g.*, *Lindsey*, 755 N.W.2d at 756 (stating that evidence "which places the event in context bolsters its probative value"); *McCoy*, 682 N.W.2d at 161 (recognizing that relationship evidence "assist[s] the jury by providing a context with which it could better judge the credibility of the principals in the relationship").

Moreover, the district court minimized any potential prejudice to appellant by providing cautionary instructions to the jury before the state presented evidence of the sexual assault. And before excusing the jury to begin its deliberations, the district court again instructed the jurors that the evidence was offered "for the limited purpose of demonstrating the nature and extent of the relationship between the defendant and [J.B.]." These cautionary instructions "lessened the probability of undue weight being given by the jury to the evidence." *Lindsey*, 755 N.W.2d at 757 (quotation omitted). We conclude that the district court did not abuse its discretion by admitting relationship evidence under section 634.20.

## II.

We next address appellant's argument that the prosecutor committed misconduct by eliciting testimony that appellant verbally abused J.B. after the district court had ruled the evidence inadmissible. Appellant did not object to the challenged testimony during

6

trial, and we therefore apply a modified plain-error test. *State v. Carridine*, 812 N.W.2d 130, 146 (Minn. 2012). Under this test, appellant must establish both that the claimed misconduct constitutes error and that the error was plain. *Id.* "The burden then shifts to the [s]tate to demonstrate that the error did not affect [appellant's] substantial rights." *Id.*

We first consider whether an error occurred. Prosecutorial error results from violations of a district court's orders, including "attempting to elicit or actually eliciting clearly inadmissible evidence." *State v. Fields*, 730 N.W.2d 777, 782 (Minn. 2007). The district court admitted relationship evidence with respect to past physical incidents between appellant and J.B., but directed that the state could not introduce "past verbal communications" between appellant and J.B. The district court reasoned that "it is not apparent how the past verbal communications between [appellant and J.B.] . . . meet the definition of 'domestic conduct,' even though these allegations could be considered emotional abuse."

Appellant contends that the prosecutor asked J.B. a question that "she either knew or should have known would elicit a reference to [appellant's] verbal abuse of [J.B.]." During direct examination, the prosecutor questioned J.B. about an incident in November 2013 when she was hospitalized in a mental health unit following a suicide attempt. The prosecutor asked J.B. what precipitated her suicide attempt, and she answered that she "hear[d] so many negative words that I started to believe them and just thought that I wasn't worth it or that I really was a bad mother."

The state is required "to prepare its witnesses, prior to testifying, to avoid inadmissible or prejudicial statements." *State v. McNeil*, 658 N.W.2d 228, 232 (Minn.

7

App. 2003).  Here, the prosecutor did not ask J.B. to describe the "negative words," nor did the prosecutor ask her who made the negative comments.  And although J.B. made a passing reference to "negative words," she did not describe them in any detail or identify appellant as the individual who made negative remarks to her.  This suggests that the prosecutor adequately prepared J.B. to avoid referencing any inadmissible statements, and we determine that an error did not occur.  Because we conclude that an error did not occur, there can be no finding that the error was plain.

Lastly, we determine that even if a plain error occurred, it did not affect appellant's substantial rights.  If an appellant establishes plain error, the burden shifts to the prosecution to demonstrate that the error did not prejudice the appellant's substantial rights.  *State v. Leutschaft*, 759 N.W.2d 414, 418 (Minn. App. 2009).  We consider the strength of the evidence against the appellant, the pervasiveness of the misconduct, and whether the appellant had an opportunity or made efforts to rebut the improper conduct.  *State v. Davis*, 735 N.W.2d 674, 682 (Minn. 2007).  "If the state fails to demonstrate that substantial rights were not affected, the appellate court then assesses whether it should address the error to ensure fairness and the integrity of the judicial proceedings."  *Id.* (quotation omitted).

Appellant argues that this case revolved primarily around "conflicting stories" between appellant and J.B.  Appellant claims that the testimony concerning J.B.'s suicide attempt "would make it nearly impossible" for the jury to credit appellant's version of events on February 8.  We are not persuaded by this argument.  J.B.'s reference to "negative words" was minor, and Minnesota caselaw recognizes that statements that are

8

"brief, isolated, [and] not repeated" are unlikely to have a substantial impact on the jury. *State v. Wilford*, 408 N.W.2d 577, 580 (Minn. 1987). We are satisfied that the testimony elicited during J.B.'s direct examination did not affect appellant's substantial rights.

**Affirmed.**