**STATE of Minnesota, Respondent,**

**v.**

**Michael A. LINDSEY, Appellant.**

**No. A07–1115.**

Court of Appeals of Minnesota.

Sept. 2, 2008.

Lori Swanson, Attorney General, St. Paul, MN; and Michael O. Freeman, Hennepin County Attorney, Donna J. Wolfson, Assistant County Attorney, Minneapolis, MN, for Respondent.

Robert D. Miller, Robert D. Miller Law Office, Minneapolis, MN, for Appellant.

Considered and decided by KALITOWSKI, Presiding Judge; HUDSON, Judge; and COLLINS, Judge.*

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

## OPINION

HUDSON, Judge.

In this appeal from his conviction of second-degree assault and terroristic threats, appellant argues that the district court abused its discretion by admitting evidence of his subsequent similar conduct against a domestic-abuse victim. Appellant also argues that the prosecutor committed prejudicial misconduct by eliciting race-based testimony and making improper references during closing argument. Because Minn.Stat. § 634.20 permits relationship evidence of similar subsequent, as well as prior, conduct and because the probative value of the relationship evidence outweighs its prejudicial effect, the district court did not abuse its discretion by admitting the evidence. In addition, the record does not support appellant's claim of prosecutorial misconduct. We affirm.

## FACTS

The state charged appellant Michael Lindsey with second-degree assault with a dangerous weapon, terroristic threats, and false imprisonment in connection with a June 29, 2006 incident resulting in injuries to his girlfriend, A.J. Before appellant's jury trial, the district court ruled, over objection by the defense, that the state could introduce evidence of two subsequent acts committed by appellant against A.J. on August 5 and August 15, 2006, as evidence of similar conduct against a victim of domestic abuse under Minn.Stat. § 634.20 (2004).

### Charged offense

At trial, two Minneapolis police officers testified that they responded to a 9–1–1 call on June 29 and observed A.J. on the steps of a residence, crying, with blood coming from her nose, and complaining that her ribs hurt. A.J. told the officers that when she and appellant had been driving the previous evening, appellant saw someone he knew, and he got out of the car. After A.J. made a U-turn and could not find appellant, she returned home. A.J. told the officers that when appellant came home about 2:00 a.m., appellant punched her in the face and head, dragged her through the house, hit her in the head with a phone, cut off a chunk of her hair with a knife, and threatened to kill her. One of the officers testified that she could see welt marks on A.J.'s forehead, and her hair was in disarray. At the scene, the officers examined two knives and a phone with a battery that had been knocked loose or removed.

A.J.'s probation officer testified that A.J. told the officer that appellant had assaulted her. The state also introduced A.J.'s later statement to police that during the incident, appellant had cut off some of her hair, dragged her around the house, hit her with a phone, and threatened to kill her.

### August 5 incident

A Minneapolis police officer testified that he was called to a domestic assault on August 5 at a SuperAmerica station. When the officer arrived, A.J. told him that appellant had poked her in the eye. The officer noticed that A.J.'s left eye was swollen and bruised and arrested appellant; he was later charged with third-degree assault. Photographs were introduced of A.J.'s injuries, and an emergency-room doctor testified that she had sustained an orbital bone fracture.

### August 15 incident

A Minneapolis police officer testified that when he responded to a domestic-assault call on August 15, A.J. reported that appellant had assaulted her. The officer observed that A.J. had two black eyes, a swollen nose, and dried blood on her

nostrils. A.J. was taken to the hospital, but she left against medical advice.

A.J.'s probation officer escorted A.J. to the Domestic Abuse Service Center, where A.J. gave an interview stating that on or about August 5, appellant punched her in the face and poked her in the eye, and that on August 15, he punched her in the face twice, threw her food in the garbage, and dragged her out of the house.

At trial, A.J., who was subpoenaed to testify, recanted her previous statements to investigators concerning all of the incidents. She testified that she took "a whole mess load" of medications for bipolar, borderline personality, and post-traumatic stress disorders. She testified that on June 29 appellant did not threaten her, but only protected himself because she threw a knife at him when she thought he was cheating on her. She testified that she assaulted appellant first on "every single" occasion because "he'd get on [her] nerves." The state introduced recordings of phone calls appellant made to A.J. from the Hennepin County Jail, discussing a plan that A.J. would testify that no abuse occurred.

Four times during trial, and again during jury instructions, the district court told the jury that evidence of the August 5 and August 15 incidents was offered only for the limited purpose of assisting the jury in determining whether appellant committed the charged offense. The district court told the jury several times that convicting appellant on the basis of the other incidents might result in unjust, double punishment. The jury convicted appellant of second-degree assault and terroristic threats, but acquitted him of false imprisonment. This appeal follows.

## ISSUES

I. Did the district court abuse its discretion by admitting evidence of appellant's similar conduct occurring after the charged offense as relationship evidence under Minn.Stat. § 634.20?

II. Did the prosecutor commit misconduct by eliciting racial remarks from a witness or making statements in closing argument in disregard of the district court's instructions?

## ANALYSIS

### I

■ We review for an abuse of discretion the district court's decision to admit evidence of similar conduct by the defendant against an alleged domestic-abuse victim under Minn.Stat. § 634.20. *State v. McCoy,* 682 N.W.2d 153, 161 (Minn.2004). Appellant has the burden to establish that the district court abused its discretion and that appellant was prejudiced. *State v. Amos,* 658 N.W.2d 201, 203 (Minn.2003) (citation omitted); *see also McCoy,* 682 N.W.2d at 161 (holding that evidence admitted under section 634.20 need not meet the clear-and-convincing standard required for admission of character or *Spreigl* evidence, but need only be more probative than prejudicial).

### Subsequent conduct

■ The district court may admit [e]vidence of similar conduct by the accused against [a] victim of domestic abuse ... unless the probative value [of that evidence] is substantially outweighed by the danger of unfair prejudice, confusion, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence of the issue.

Minn.Stat. § 634.20 (2004).

Appellant argues that the district court abused its discretion by admitting evidence of the August 5 and August 15 incidents

because section 634.20 permits the introduction of "evidence of similar conduct" only if that conduct occurred *prior to* the incident giving rise to the charged offense. This court reviews questions of statutory interpretation de novo. *McCoy,* 682 N.W.2d at 158.

■ A court interprets a statute to discern legislative intent. Minn.Stat. § 645.16 (2006). If the statute's language is plain and free from ambiguity, the court does not engage in further construction. *Id.; McCoy,* 682 N.W.2d at 158. The plain language of Minn.Stat. § 634.20, "evidence of similar conduct," is not ambiguous. The statute does not state that evidence of "similar conduct" is admissible only if that conduct occurred *before* the incident giving rise to the charged offense. To the contrary, there is no temporal restriction contained in the statute. Therefore, we conclude that the evidence of the August 5 and August 15 incidents is admissible as relationship evidence.

Even if we were to determine that section 634.20 is ambiguous, and thus susceptible to interpretation, we would arrive at the same result. The Minnesota legislature amended section 634.20 in 2002 to change its language from "similar prior conduct" to "similar conduct." *See* 2002 Minn. Laws ch. 314, § 9, at 516. And the legislative history of the amended provision shows that the legislature intended that subsequent conduct by the accused against a domestic-abuse victim would be considered as relationship evidence admissible under the statute. Hearing on H.F. No. 2840 Before House Committee on Civil Law (Feb. 20, 2002) (statement of Rep. Clark).

Appellant argues that in *McCoy,* 682 N.W.2d at 159, relationship evidence under section 634.20 was defined as evidence of "prior conduct." But the conduct at issue in *McCoy* occurred in 2001, before the 2002 statutory amendment took effect. Further, the court in *McCoy* did not rest its analysis on a distinction between prior and subsequent conduct. *Cf. State v. Kennedy,* 585 N.W.2d 385, 390 (Minn.1998) (holding that, for the purpose of a *Spreigl* analysis, "evidence of other crimes, including subsequent ones, may be admitted for a proper purpose"). Therefore, we conclude that the district court properly admitted evidence of the August 5 and August 15 incidents under section 634.20.

### Probative value vs. prejudicial effect

■ Appellant also argues that, even if evidence of appellant's subsequent conduct is admissible under section 634.20, the district court abused its discretion by admitting the evidence because its probative value was outweighed by its prejudicial effect. In deciding whether to admit evidence under section 634.20, the district court must consider whether the probative value of the evidence is outweighed by the danger of unfair prejudice. *State v. Bell,* 719 N.W.2d 635, 640 (Minn.2006).[1]

■ "Evidence that helps to establish the relationship between the victim and the defendant or which places the event in context bolsters its probative value." *Kennedy,* 585 N.W.2d at 392; *see also McCoy,* 682 N.W.2d at 161 (holding that district court did not abuse its discretion in allowing relationship "evidence that, if believed by the jury, could have assisted the jury by providing a context with[in] which it

---

**1.** This court has recently held that evidence of similar conduct is inadmissible under section 634.20 if a defendant has been previously acquitted of criminal charges based on that conduct, concluding that "[s]uch evidence is so unfairly prejudicial that it inherently violates the probative/prejudicial balancing test." *State v. O'Meara,* 755 N.W.2d 29, 34, No. A07–0825(Minn.App. 2008).

could better judge the credibility of the principals in the relationship"). In the context of appellant's relationship with A.J, evidence of appellant's later conduct had significant probative value in assisting the jury to judge witness credibility.

■ Appellant argues that evidence of the other incidents was unfairly prejudicial. "When balancing the probative value against the potential prejudice, unfair prejudice is not merely damaging evidence, even severely damaging evidence; rather, unfair prejudice is evidence that persuades by illegitimate means, giving one party an unfair advantage." *Bell,* 719 N.W.2d at 641 (quotation omitted). Appellant first maintains that prejudice was established because the prosecutor intentionally elicited testimony on racial remarks made by appellant after he was arrested for the August 5 incident. But this trial testimony does not establish that evidence of the August 5 incident was unfairly prejudicial to appellant.

Appellant also argues that evidence of the other incidents should have been excluded as cumulative because it included: testimony from police officers and other professionals; photographs and descriptions of A.J.'s injuries; and A.J.'s statements to investigators. The district court acknowledged that it allowed a significant amount of evidence pertaining to the August 5 and August 15 incidents. But this evidence assisted the jury by providing a context for the charged offense. This was particularly important here because appellant exercised his right not to testify and A.J.'s testimony contradicted her earlier statements to investigators. *See McCoy,* 682 N.W.2d at 161 (stating that "[d]omestic abuse is unique in that it typically occurs in the privacy of the home, it frequently involves a pattern of activity that may escalate over time, and it is often

underreported"). Therefore, the evidence was properly admitted.

Further, the record shows that the district court minimized any potential prejudice to appellant by cautioning the jury several times that evidence of the later incidents was offered for the limited purpose of determining whether appellant committed the acts occurring on June 29 and that using the evidence to convict appellant of acts occurring at a different time would result in unjust double punishment. These cautionary instructions "lessened the probability of undue weight being given by the jury to the evidence." *Kennedy,* 585 N.W.2d at 392. The district court did not abuse its discretion in admitting the relationship evidence.

**II**

■ Appellant raises allegations of prosecutorial misconduct in a pro se supplemental brief. When considering issues of prosecutorial misconduct, this court will "reverse only if the misconduct, when considered in light of the whole trial, impaired the defendant's right to a fair trial." *State v. Swanson,* 707 N.W.2d 645, 658 (Minn. 2006). If, as here, the defendant failed to object to the misconduct, a new trial will be granted if the misconduct amounted to plain error affecting the defendant's substantial rights. *State v. Mayhorn,* 720 N.W.2d 776, 785 (Minn.2006). "[A]n error affects substantial rights if there is a reasonable likelihood that the error had a significant effect on the jury's verdict." *State v. Vance,* 734 N.W.2d 650, 656 (Minn. 2007).

■ Appellant argues that the prosecutor committed misconduct by eliciting testimony about appellant's remark when he was arrested on August 5 that could show appellant's possible racial bias. The record shows that, in questioning the officer, the prosecutor asked how appellant

acted during the arrest. The officer testified that appellant "made some spontaneous utterances of his own." The prosecutor then asked: "Did [appellant] say anything else to you?" The officer responded: "He called my partner and I[sic] some derogatory, racial terms and some swear words on the way to jail." In cases holding that a prosecutor. committed misconduct by injecting considerations of race into those proceedings, the statements were far more egregious than the prosecutor's open-ended question here. *See, e.g., State v. Cabrera,* 700 N.W.2d 469, 475 (Minn.2005) (reversing in interests of justice based on "serious prosecutorial misconduct" in interjecting race into closing argument); *State v. Ray,* 659 N.W.2d 736, 747 (Minn.2003) (holding that prosecutor's attempt to supply a race-based explanation for witnesses' behavior improperly invited jury to apply racial and socioeconomic considerations in determining guilt). The record does not support a determination that the prosecutor's question amounted to misconduct.

■ Appellant also argues that the prosecutor committed misconduct by arguing that a phone that appellant may have used to hit A.J. was a dangerous weapon in violation of the district court's order. The district court's proposed jury instructions included the statutory definition of a dangerous weapon as anything "designed as a weapon and capable of producing death or great bodily harm ... or [an]other device or instrumentality that, in the manner it is used or intended to be used, is calculated or likely to produce death or great bodily harm." Minn.Stat. § 609.02, subd. 6 (2004). The defense objected to the second part of the instruction, arguing that it might refer to a phone when the record lacked evidence that a phone was used in the assault. But the district court ulti-

mately ruled that it would "leave the language [in the instruction] the way it is." Thus, the district court's ruling did not prohibit the prosecutor from arguing that a phone could fit the definition of a dangerous weapon. Further, both the state and the defense in closing argument referred to both a knife *and* a phone as possible dangerous weapons, so that the jury could have determined that a knife found at the scene was the dangerous weapon used. On this record, no misconduct occurred, and appellant's right to a fair trial was not impaired.

## DECISION

Because Minn.Stat. § 634.20 permits the introduction of subsequent similar conduct as relationship evidence and because the evidence of appellant's later conduct of domestic abuse was more probative than prejudicial, the district court did not abuse its discretion by admitting that evidence. The record does not support appellant's claim of prosecutorial misconduct.

**Affirmed.**