*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0179**

State of Minnesota,
Respondent,

vs.

Michael Antwon Common,
Appellant

**Filed December 15, 2014
Affirmed
Worke, Judge**

Olmsted County District Court
File No. 55-CR-13-4436

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Mark A. Ostrem, Olmsted County Attorney, James P. Spencer, Assistant County Attorney, Rochester, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Andrea Barts, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Worke, Presiding Judge; Reyes, Judge; and Crippen,

Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**WORKE**, Judge

Appellant challenges the district court's admission of evidence assisting the jury in evaluating the credibility of parties in a relationship. We affirm.

## FACTS

On July 8, 2013, appellant Michael Antwon Common went to the residence of A.S. Common and A.S. had previously been in a relationship, and have a daughter together. A.S. was living with a roommate.

Shortly after Common's arrival, A.S.'s roommate heard screams of "Get off me" coming from A.S.'s bedroom, sounds of her choking and gasping for air, and impacts that she described as the sound of "flesh on flesh." A.S.'s roommate called 911. Common was charged with domestic assault by strangulation and felony domestic assault.

At trial, A.S. testified that she could not remember what occurred in her residence that night. However, A.S. had given a recorded statement to the police when she was in the hospital following the incident. In the recording, played for the jury, A.S. described that Common punched her, kicked her, knocked her down, pulled her hair, and choked her.

A.S. also testified, over defense objection, to three prior incidents involving Common: (1) in August 2010, while A.S. was pregnant, Common struck her in the stomach; (2) in September 2010, Common had violated a domestic-abuse no-contact order (DANCO) and was found in her apartment; and (3) in June 2011, Common had hit

and stabbed A.S. with car keys. Prior to A.S.'s testimony and at close of trial, the district court cautioned the jury on how to treat this evidence.

Common was found guilty as charged. This appeal follows.

## DECISION

Common first argues that violation of a DANCO is not "similar conduct" as defined by Minn. Stat. § 634.20 (2012).[1] "Because this issue turns on statutory interpretation, it is reviewed de novo." *State v. Valentine*, 787 N.W.2d 630, 636 (Minn. App. 2010).

Our supreme court has concluded that section 634.20 is unambiguous, and thus the plain meaning of the statute governs. *State v. McCoy*, 682 N.W.2d 153, 158-59 (Minn. 2004). Section 634.20 prescribes that similar conduct "includes, but is not limited to, evidence of domestic abuse, violation of an order for protection [OFP] under section 518B.01; violation of a harassment restraining order [HRO] under section 609.748; or violation of section 609.749 or 609.79, subdivision 1." Minn. Stat. § 634.20.

We conclude that violation of a DANCO fits within the plain language of the statute. While a DANCO under Minn. Stat. § 629.75 (2012) is not specifically listed, similar conduct "is not limited to" the specifically listed statutes. *Id*. DANCOs are very similar to OFPs and HROs in that all seek to protect victims from those who would harm or harass them. *Compare* Minn. Stat. § 518B.01, subd. 4 (2012), *and* Minn. Stat. § 609.748, subd. 5 (2012), *with* Minn. Stat. § 629.75. The distinction between a DANCO

---

[1] The statute now refers to evidence of "domestic conduct" rather than "similar conduct." Minn. Stat. § 634.20 (Supp. 2013).

and the other orders is that a DANCO need not be requested by the victim; it may be issued upon the motion of a prosecutor or the court. *See id.*

Common argues that violation of a DANCO is not violent conduct, but both OFPs and HROs can be violated by non-violent means. *See, e.g.*, Minn. Stat. § 518B.01, subd. 6(10) (2012) (order abusing party to have no contact with petitioner in person, by mail, or via a third party); Minn. Stat. § 609.748, subds. 4(2), 5(2) (2012) (order harassing party to have no contact with the petitioner). Common further argues that a DANCO violation does not constitute evidence of "domestic abuse" as defined by Minn. Stat. § 518B.01, subd. 2(a) (2012). But similar conduct is not admissible because it is evidence of domestic abuse; it is admissible to "illuminate the history of the relationship," "put the crime charged in the context of the relationship," and to "assist[]the jury by providing a context with which [to] better judge the credibility of the principals in the relationship." *McCoy*, 682 N.W.2d at 159, 161.

Common's arguments are unpersuasive, and we conclude that violation of a DANCO is "similar conduct" as defined in Minn. Stat. § 634.20.

### *Probative vs. prejudicial*

Common next argues that the district court erred in admitting the prior acts because their probative value was substantially outweighed by the danger of unfair prejudice. A district court's ruling on the admission of relationship evidence is reviewed for an abuse of discretion. *State v. Lindsey*, 755 N.W.2d 752, 755 (Minn. App. 2008), *review denied* (Minn. Oct. 29, 2008).

Relationship evidence is admissible "unless the probative value is substantially outweighed by the danger of unfair prejudice." Minn. Stat. § 634.20. "When balancing the probative value against the potential prejudice, unfair prejudice is not merely damaging evidence, even severely damaging evidence; rather, unfair prejudice is evidence that persuades by illegitimate means, giving one party an unfair advantage." *Lindsey*, 755 N.W.2d at 757 (quotation omitted). Additionally, cautionary jury instructions "lessen[] the probability of undue weight being given by the jury to the evidence." *Id.* (quotation omitted).

The record indicates that the district court found significant probative value in the prior incidents because they illuminated the nature of A.S. and Common's relationship and provided the jury useful context. This is the purpose of relationship evidence. *See McCoy*, 682 N.W.2d at 159. The district court concluded that the prior acts showed that Common's attitude toward A.S. was one of control and that he was entitled to be physically present around her. The district court also highlighted the concern from *McCoy* that "[d]omestic abusers often exert control over their victims, which undermines the ability of the criminal justice system to prosecute cases effectively." *Id.* at 161. The state expressed concern that A.S. would be reluctant to testify, and indeed this was the case: A.S. testified that she did not remember what occurred when Common entered her dwelling that night, despite the account that she gave in the hospital following the incident. Relationship evidence is probative because it helps the jury evaluate the "credibility of the principals in the relationship." *Id.*

5

The potential for unfair prejudice was low. The state did not mention the prior acts during closing argument. The district court twice read a cautionary instruction directly from the standard jury instructions which appropriately limited use of the evidence. 10 *Minnesota Practice*, CRIMJIGs 2.01, 3.16 (2006). "We presume that juries follow instructions given by the court." *State v. Matthews*, 779 N.W.2d 543, 550 (Minn. 2010). Common offers nothing to rebut this presumption.

The district court did not abuse its discretion in admitting the relationship evidence.

**Affirmed.**