*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0605**

Joshua Steven Parsons, petitioner,
Appellant,

vs.

State of Minnesota,
Respondent.

**Filed November 23, 2015
Affirmed
Smith, Judge**

Stearns County District Court
File Nos. 73-CR-11-10795; 73-CV-12-11657

Cathryn Middlebrook, Chief Appellate Public Defender, Andrea Barts, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Janelle P. Kendall, Stearns County Attorney, Michael J. Lieberg, Assistant County Attorney, St. Cloud, Minnesota (for respondent)

Considered and decided by Stauber, Presiding Judge; Smith, Judge; and Minge, Judge.[*]

_____

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**SMITH**, Judge

We affirm the postconviction court's denial of postconviction relief because the district court did not abuse its discretion by admitting relationship evidence and denying appellant's motion for a continuance and because appellant's pro se arguments lack merit.

## FACTS

On November 30, 2011, the state charged appellant Joshua Parsons with felony domestic assault and domestic assault by strangulation following an incident on November 28-29 in which he allegedly assaulted his girlfriend, K.N. According to K.N., Parsons threatened her, grabbed her by her hair, threw her on the floor, held her by her throat, punched her in the stomach, and stomped on her leg. The jury found Parsons guilty of felony domestic assault and not guilty of domestic assault by strangulation.

Parsons timely filed a petition for postconviction relief, arguing that the district court erred by admitting relationship evidence under Minn. Stat. § 634.20 (2010), excluding his father's phone records, and denying his motion for a continuance to obtain a records custodian. Parsons did not request an evidentiary hearing. The postconviction court denied Parsons's petition for postconviction relief.

## DECISION

We review a postconviction court's denial of postconviction relief for an abuse of discretion, reviewing legal issues de novo and factual issues to determine "whether there is sufficient evidence in the record to sustain the postconviction court's findings."

*Matakis v. State*, 862 N.W.2d 33, 36 (Minn. 2015) (quotation omitted). We will not reverse a denial of postconviction relief "unless the postconviction court exercised its discretion in an arbitrary or capricious manner, based its ruling on an erroneous view of the law, or made clearly erroneous factual findings." *Id.* (quotation omitted).

**I.**

Parsons first challenges the state's introduction of relationship evidence under Minn. Stat. § 634.20. Evidence of prior crimes or bad acts is generally not admissible to show that a person acted in conformity with prior behavior. Minn. R. Evid. 404(b). Evidence of the defendant's prior conduct against an alleged victim of domestic abuse, however, is admissible unless the probative value of the evidence is "substantially outweighed by the danger of unfair prejudice" to the defendant, "or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Minn. Stat. § 634.20. "Relationship evidence is relevant because it illuminates the history of the relationship between the victim and defendant and may also help prove motive or assist the jury in assessing witness credibility." *State v. Matthews*, 779 N.W.2d 543, 549 (Minn. 2010) (quotation omitted). We review a district court's admission of relationship evidence for an abuse of discretion. *State v. Lindsey*, 755 N.W.2d 752, 755 (Minn. App. 2008), *review denied* (Minn. Oct. 29, 2008).

Before trial, the state filed a motion to introduce relationship evidence under Minn. Stat. § 634.20. The district court granted the state's motion in part, allowing it to admit "two or three" of its proposed ten incidents of relationship evidence. The district court explained that the presentation of additional incidents would "confuse and mislead

3

the jury[,] . . . unduly delay the trial, waste the jury's time, and involve the presentation of cumulative evidence."

On the first day of trial, the prosecutor indicated that he had decided to offer only one instance, an alleged assault that occurred on Thanksgiving, November 24, 2011, four to five days before the charged assault. In addition, the prosecutor intended to ask K.N. to generally describe the relationship in her testimony, including that Parsons was controlling, jealous, and abusive.

Before K.N.'s testimony, the district court read a cautionary instruction:

> [T]he [s]tate will offer some general testimony about the relationship between [K.N.] and [Parsons] and specifically of conduct by [Parsons] on November 24 of 2011. This evidence is being offered for the limited purpose of demonstrating the nature and extent of the relationship between [Parsons] and [K.N.] in order to assist you in determining whether [Parsons] committed those acts with which [he] is charged in the complaint. [Parsons] is not being tried for and may not be convicted of any behavior other than the charged offenses, and you are not to convict [Parsons] on the basis of conduct on November 24, 2011. To do so might result in unjust double punishment.

K.N. then testified that on November 24, Parsons took her by her hair, pulled her around her apartment, and grabbed her by the throat. She also responded affirmatively to questions regarding whether Parsons was controlling, jealous, verbally abusive, and physically abusive. The district court read similar cautionary instruction about the November 24 incident at the end of the trial.

Parsons argues that the admitted evidence about his relationship with K.N. and the November 24 incident "had minimal probative value and great potential for unfair

4

prejudice." He suggests that the relationship evidence "had little bearing" on the elements of his charges. Because the evidence presented in this case could help the jury understand the relationship between Parsons and K.N. and help it assess K.N.'s credibility, we conclude it was relevant. *See Matthews*, 779 N.W.2d at 549; *Lindsey*, 755 N.W.2d at 757 (stating that evidence of the appellant's conduct "had significant probative value in assisting the jury to judge witness credibility").

Parsons also argues that the relationship evidence created a danger of unfair prejudice because it led the jury to focus on his bad character and to punish him for his prior conduct. But the relationship evidence was limited to one specific incident and a general description of the relationship. In addition, the district court twice provided cautionary instructions that the relationship evidence was admitted "for the limited purpose of demonstrating the nature and extent of the relationship between [Parsons] and [K.N.]" and that the jury was not to convict Parsons based on his previous conduct. The district court's cautionary instructions minimized any potential prejudice to Parsons. *See Lindsey*, 755 N.W.2d at 757 (explaining that similar cautionary instructions "minimized any potential prejudice to appellant" and "lessened the probability of undue weight being given by the jury to the evidence" (quotation omitted)). Although the relationship evidence may have been damaging to Parsons, it did not persuade the jury by illegitimate means. *See State v. Bell*, 719 N.W.2d 635, 641 (Minn. 2006) ("[U]nfair prejudice is not merely damaging evidence, even severely damaging evidence; rather, unfair prejudice is evidence that persuades by illegitimate means, giving one party an unfair advantage." (quotation omitted)).

5

The district court did not abuse its discretion in admitting the relationship evidence because the probative value of the evidence was not "substantially outweighed by the danger of unfair prejudice" to Parsons. *See* Minn. Stat. § 634.20. We also note that the other evidence of Parsons's guilt was strong and that any error in admitting the relationship evidence did not significantly affect the verdict. *See State v. Benton*, 858 N.W.2d 535, 541 (Minn. 2015) (explaining that, in deciding whether the evidence significantly affected the verdict, we can consider several factors, including whether the district court provided a cautionary instruction and "whether the evidence of guilt was overwhelming"). Therefore, the postconviction court did not abuse its discretion in denying postconviction relief on this issue.

**II.**

Parsons also challenges the district court's denial of his motion for a continuance. The district court has discretion to grant or deny a continuance motion. *State v. Barnes*, 713 N.W.2d 325, 333 (Minn. 2006). A defendant who challenges the denial of a continuance "must show that the denial prejudiced defendant by materially affecting the outcome of the trial." *Id.* (quotation omitted).

On the first day of trial, K.N. provided the following testimony about her phone:

> [PROSECUTOR]: Did you think about calling for help?
> [K.N.]: Yes. But I couldn't because he took my phone.
> [PROSECUTOR]: Did you know where your phone was?
> [K.N.]: No. He had taken it when he was playing with it. He had somehow ended up taking it and hiding it and I didn't know where it was at.
> [PROSECUTOR]: Did you ever find the phone?
> [K.N.]: About five days later.
> [PROSECUTOR]: Where was it?

6

[K.N.]: It was up in the very high spot in the closet.

At the start of the second day of trial, Parsons's attorney stated that she had met the night before with Parsons's father, S.P. She asked S.P. how he had arranged to meet K.N. on the day after the assault, and he responded that he had called her on her cell phone. S.P. then went to a Verizon store and accessed his phone records. According to Parsons's attorney, S.P. "brought a copy of the records in today that do establish that he had conversations with [K.N.] on that day to her cell phone." Parsons's attorney indicated her intent to introduce the phone records into evidence with S.P. providing foundation. But the district court agreed with the prosecutor that S.P. could not provide foundation and that only someone from Verizon could do so. Parsons's attorney also explained her understanding that the district court would not allow a continuance for her to obtain a records custodian to authenticate the phone records. The district court stated: "Given the late notice to the [s]tate and the posture of where we are at trial, that is correct, I'm not allowing that."

S.P. testified that he met with K.N. on November 30 to retrieve Parsons's belongings, and that he had called K.N. on her cell phone three times to arrange this meeting. The district court allowed S.P. to testify that he had looked at his phone records online before testifying to refresh his recollection of these calls.

Parsons's attorney argued in her closing statement that K.N.'s testimony contained inconsistencies and that S.P. refuted K.N.'s story about not finding her cell phone for several days. The attorney stated that "we know she's lying about" not finding the phone

for five days because S.P. called her the next day and that "[i]f you are going to lie about that, how about the rest?" In rebuttal, the prosecutor stated:

> [Defense counsel] claims that [K.N.] lied about the cell phone and that's how . . . basically she can prove that she's lying about everything. She lied about the cell phone. How does that happen? How can she prove that? The [d]efendant's father. The [d]efendant's father, who cares about his son and doesn't want him to get into any trouble. The [d]efendant's father said he called [K.N.] on her cell phone the next day and the day after that. That's the only way, ladies and gentlemen, that the defense can prove that [K.N.] is lying. Ladies and gentlemen, what did you hear? [K.N.] admitted . . . the [d]efendant's father came over, yes. She never said one thing about talking to him on the cell phone. She never said one thing about it because it didn't happen. Did he stop over and pick up the things? Sure, he did. Yep, that's not in dispute. But she didn't lie about the phone.

The state argues that we should affirm the district court's denial of Parsons's continuance motion because Parsons did not submit an offer of proof to the district court and therefore we cannot consider the content of S.P.'s phone records. We agree that, because the phone records were not introduced at trial, they are not part of the record on appeal. But Parsons's attorney told the district court that S.P. had accessed his phone records and brought copies with him to court "that do establish that he had conversations with [K.N.] on that day to her cell phone," and S.P. testified to the same effect. The content of the phone records was therefore sufficiently apparent from the context, and we will consider Parsons's argument. *See* Minn. R. Evid. 103(a)(2) ("Error may not be predicated upon a ruling which . . . excludes evidence unless . . . the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked."); *State v. Pak*, 787 N.W.2d 623, 627 (Minn. App. 2010)

8

("[A]n offer of proof is not necessary where the substance of the excluded evidence is apparent from the context.").

Parsons argues that the district court abused its discretion in denying his continuance motion because he made his motion as soon as he learned of the evidence and the state would not have been prejudiced by a delay. The postconviction court questioned the timing of Parsons's motion, stating that the motion was made on the second day of a two-day trial and ten months after Parsons learned that K.N. alleged he had taken her phone. The postconviction court stated: "If the issue with the phone was as central to the case as Parsons now claims, it seems inexplicable that he failed to pursue that information prior to trial." But although the complaint stated that K.N. was unable to contact police because Parsons had taken her phone, it did not mention how long K.N. was without her phone. Parsons had no notice that K.N. would testify that she could not find her phone for five days. Therefore, the postconviction court's finding that Parsons had notice of K.N.'s claims about the phone ten months before trial is erroneous.

But even if Parsons moved for a continuance as soon as he could—after S.P. realized he could refute K.N.'s testimony—the district court had discretion to deny Parsons's continuance motion, especially given the motion's timing on the second day of trial. *See Barnes*, 713 N.W.2d at 333 ("Greater deference is generally given to the district court's denial of a continuance where, as here, the trial had already begun."). Because the district court had even greater deference to deny the continuance motion because trial had begun, *see id.*, the district court's consideration of "the late notice to the [s]tate and the posture of where we are at trial" was appropriate. Contrary to Parsons's

9

assertion, there is no evidence that the district court denied Parsons's motion simply "as a matter of convenience."

More importantly, Parsons cannot meet his burden to show that the denial materially affected the outcome of his trial. *See id.* at 333. K.N.'s testimony about the cell phone was very brief and mostly referred to her inability to contact police. S.P. provided much lengthier testimony about calling K.N. three times on her cell phone, and described how his phone records had refreshed his memory. Although S.P.'s testimony may not have had "the same corroborative force" as his phone records, the testimony allowed the jury to analyze K.N.'s credibility regarding her cell-phone claims.

Parsons argues that this case is similar to *In re Welfare of T.D.F.*, in which the supreme court reversed a denial of a continuance because the denial deprived the defendant's attorney of "adequate trial preparation." 258 N.W.2d 774, 775 (Minn. 1977). But in *T.D.F.*, the attorney had not prepared at all for a hearing about "the capability of the juvenile system to treat" the appellant, an issue that required extensive "investigative work." *Id.* Here, Parsons's attorney was not prepared to introduce evidence regarding a relatively minor aspect of K.N.'s testimony. The attorney had adequately cross-examined K.N. about many other topics. In addition, S.P.'s testimony allowed the jury to examine K.N.'s credibility regarding the allegedly hidden cell phone. Given the other evidence presented and the attorney's otherwise adequate preparation for trial, *T.D.F.* is distinguishable. *See id.* (stating that the attorney conducted no investigation and presented no evidence at the hearing).

10

Finally, Parsons suggests that the prosecutor's rebuttal "illustrates how critical the phone records were to Parsons'[s] defense." But the prosecutor only discussed the phone records in response to Parsons's attorney's lengthy discussion of them in her closing argument. And the prosecutor's discussion of the phone records was only a brief portion of his closing arguments. As the postconviction court found, the prosecutor's discussion was "good practice" in addressing the arguments Parsons's attorney raised.

Given the evidence in the record regarding Parsons's conduct on the night of the alleged assault and the discussions at trial about K.N.'s cell phone and credibility, we conclude that the introduction of the phone records through a records custodian would not have affected the outcome of the trial. Contrary to Parsons's suggestion, the phone records could not prove that K.N. lied about the assault or that she was not credible. Therefore, the denial of Parsons's continuance motion did not materially affect the outcome of the trial. *See Barnes*, 713 N.W.2d at 333.

Because the district court did not abuse its discretion in denying Parsons's motion for a continuance, the postconviction court did not abuse its discretion in denying postconviction relief on this issue.

**III.**

Parsons raises several additional issues in his pro se supplemental brief. Although Parsons fails to cite legal authority, we will briefly discuss the merits of his arguments.

Parsons suggests that the evidence was insufficient to support his conviction because the evidence does not support a conclusion that K.N. was assaulted. But

Parsons's attorney challenged both K.N. and the police officer about whether the photographs accurately depicted K.N.'s injuries and challenged K.N.'s chiropractor about other potential causes for K.N.'s injuries. The jury analyzed the testimonies and photographs and found Parsons guilty of felony domestic assault. Viewing the evidence in the light most favorable to the conviction, the evidence was sufficient to support the verdict. *See State v. Caine*, 746 N.W.2d 339, 356 (Minn. 2008) (explaining that, when assessing the sufficiency of the evidence, we analyze the record "to determine whether the evidence, when viewed in a light most favorable to the conviction," was sufficient to allow the jury to reach its verdict (quotation omitted)).

Parsons also suggests that his attorney was ineffective because he met with her twice in ten months, she was not aware of certain evidence, and she told him only to answer direct questions. For the most part, Parsons cites facts that are not in the record and that cannot be considered by this court. We therefore decline to consider this argument. *See State v. McArthur*, 730 N.W.2d 44, 54 (Minn. 2007) (declining to address an issue that requires facts not in the record); *State v. Alvarez*, 820 N.W.2d 601, 626 (Minn. App. 2012) ("[A]n ineffective-assistance-of-counsel claim should typically be raised by a postconviction petition for relief."), *aff'd sub nom. State v. Castillo-Alvarez*, 836 N.W.2d 527 (Minn. 2013). We also note that Parsons has provided no evidence that his attorney's performance was deficient. *See Fox v. State*, 474 N.W.2d 821, 826 (Minn. 1991) (stating that a defendant must show that the attorney's performance was deficient and that "the deficient performance prejudiced the defense" (quotation omitted)). Confusion about the number of photographs that would be introduced into evidence does

12

not render the defense attorney's performance deficient, especially because the attorney viewed the photographs before the start of the trial and challenged the witnesses about them.

Parsons briefly suggests that the prosecutor committed ethical misconduct by tearing down S.P.'s testimony in his closing statement. But the prosecutor was free to discuss whether witnesses, including S.P., were credible. *See State v. McCray*, 753 N.W.2d 746, 752 (Minn. 2008) ("We have recognized that the state is free to argue that particular witnesses were or were not credible." (quotation omitted)). In addition, Parsons did not object to the prosecutor's statement at trial, and we decline to consider his prosecutorial-misconduct argument for the first time on appeal. *See State v. Powers*, 654 N.W.2d 667, 678 (Minn. 2003) ("If the defendant failed to object to the misconduct at trial, he forfeits the right to have the issue considered on appeal, but if the error is sufficient, this court may review.").

Finally, Parsons argues that the district court judge had a conflict of interest because she sat on a Board of Domestic Abuse and both presided over his trial and denied his petition for postconviction relief. But the record contains no evidence of judicial bias, and the same judge can preside over multiple hearings and make multiple rulings without bias. *See State v. Dorsey*, 701 N.W.2d 238, 249 (Minn. 2005) ("[J]udges are presumed to have the ability to set aside nonpersonal knowledge and make decisions based solely on the merits of cases before them." (quotation omitted)); *State v. Kramer*, 441 N.W.2d 502, 505 (Minn. App. 1989) ("A judge's prior adverse ruling in a case is not sufficient to show prejudice which would disqualify the judge."), *review denied* (Minn. Aug. 9, 1989);

13

*Olson v. Olson*, 392 N.W.2d 338, 341 (Minn. App. 1986) (stating that "[p]rior adverse rulings . . . cannot constitute bias").

**Affirmed.**