*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-2080**

State of Minnesota,
Respondent,

vs.

Tristan Leroy Trice,
Appellant.

**Filed January 4, 2016
Affirmed
Ross, Judge**

Hennepin County District Court
File No. 27-CR-13-26666

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Lee W. Barry, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Davi E. Axelson, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Ross, Presiding Judge; Chutich, Judge; and Hooten, Judge.

**U N P U B L I S H E D   O P I N I O N**

**ROSS**, Judge

A jury found Tristan Leroy Trice guilty of felony domestic assault. Trice appeals

from his conviction on three theories: the state failed to prove a fact that the district court

told the jury in its preliminary instructions was required for conviction; the district court wrongly instructed the jury about the meaning of "family or household members"; and the district court improperly allowed Trice's former girlfriend to testify that she suffered mental illness because of his abuse. Trice was not entitled to judgment of acquittal based on the state's failure to prove an element as the element was incompletely defined in the preliminary instructions. And he has not shown that the district court's jury instructions or evidentiary rulings prejudiced him. We therefore affirm.

**FACTS**

Police arrived at the Asteria Inn and Suites in Maple Grove on the morning of August 13, 2013, to a report of possible domestic assault. Hotel employees had been working at the front desk when they heard a woman's cries for help from an upstairs room. They went toward the room to investigate, and outside the door they heard a woman exclaim, "[H]e's going to kill me!" They went back to the desk and dialed 9-1-1. Before the police arrived, the employees saw J.P. running down the hallway yelling, "He's got my purse, he's got my purse!" A man then shoved one of the employees into the wall and ran out the back door.

The employees did not get a good look at the man; one told police she thought he was white and the other thought he was black. J.P. identified the man to police as Tristan Trice, her former fiancé.

Police interviewed J.P. They saw scratches on her neck. She told police that Trice attacked her. She said that he put his hands around her neck, inhibiting her breathing. At first she told police she did not want to give a recorded statement or have her injuries

2

photographed. But she changed her mind. Police arrested Trice and the state charged him with felony domestic assault under Minnesota Statutes section 609.2242, subdivision 4 (2012), and domestic assault by strangulation under section 609.2247, subdivision 2 (2012).

The district court gave the jury preliminary instructions about the applicable law. It instructed the jury that, for purposes of domestic abuse, "family or household member" includes persons who are either presently residing together or who have resided together previously. This instruction failed to say that it also includes people who are involved in a significant romantic or sexual relationship. (This omission is the core of Trice's arguments on appeal.)

The prosecutor summoned J.P. to testify, but she changed her story. She recanted her statements to police about Trice's assaultive behavior, also testifying that she did not recall having her injuries photographed. She claimed that she most likely had been influenced by drugs and that she made everything up because she was angry that Trice threatened to leave her. The prosecution called B.R., Trice's former girlfriend, to tell the jury about her relationship with Trice. B.R. testified that Trice slapped and choked her during a dispute in December 2008. She also testified that, as a result of that abuse, she became agoraphobic and developed depression and borderline personality disorder.

Trice moved for acquittal after the state rested its case. The district court denied the motion and submitted the case to the jury. During deliberation, the jury asked the court whether a fiancé constitutes a family or household member. Over the defense attorney's objection, the court provided an additional instruction that family or household members

include persons involved in a significant romantic or sexual relationship. The jury acquitted Trice of domestic assault by strangulation but found him guilty of felony domestic assault.

Trice appeals.

## D E C I S I O N

## I

Trice argues that the district court erred by not granting his motion for judgment of acquittal. We review the denial of a judgment of acquittal de novo, as a question of law. *State v. McCormick*, 835 N.W.2d 498, 506 (Minn. App. 2013), *review denied* (Minn. Oct. 15, 2013). A defendant is entitled to acquittal if the state's evidence is insufficient to sustain a conviction. Minn. R. Crim. P. 26.03, subd. 18(1)(a).

Trice maintains that the district court was bound to acquit him as a matter of law because the state failed to present evidence that he ever resided with J.P., a fact that he asserts is necessary for him to qualify as a "family or household member" under the domestic-assault statute as defined by the court at the close of evidence. Both felony domestic assault and domestic assault by strangulation require the state to prove that the defendant committed the acts against a "family or household member." Minn. Stat. §§ 609.2247, subd. 2, .2242, subds. 1, 4 (2012). The legislature defines family or household members to include "persons who are presently residing together or who have resided together in the past," as the district court first instructed, Minn. Stat. § 518B.01, subd. 2(b)(4) (2012), and also to include persons involved in a significant romantic or sexual relationship, *id.*, subd. 2(b)(7) (2012). Trice wants us to hold that the district court had to base its decision only on its preliminary instructions (which included the residential ground

4

but failed to include the romantic-relationship option), and not to allow the conviction to rest on his admitted romantic or sexual relationship with J.P. He argues that because the state presented no evidence that he and J.P. resided together, he was entitled to judgment of acquittal.

Trice builds his argument on his theory that the district court's preliminary instruction became the "law of the case," binding the district court to evaluate the motion for acquittal on that instruction rather than on the full breadth of the statute. But Trice fails to identify any authority that supports the theory. And our review of the caselaw informs us that preliminary instructions are instead discretionary and that their use does not obviate either the possibility of or necessity for amendment or augmentation even after the evidence is in. *See State v. Kirch*, 322 N.W.2d 770, 774 (Minn. 1982); *cf.* Minn. R. Crim. P. 17.05 (generally allowing the district court to amend the criminal complaint any time before verdict).

Trice directs us to the civil case of *Schunk v. Wieland*, 286 Minn. 368, 176 N.W.2d 119 (1970). *Schunk* does not make Trice's point. The plaintiff in *Schunk* received an unfavorable jury verdict and on appeal challenged the jury instructions. But he had not objected to the district court's instructions at the close of testimony or even in his posttrial motions. *Id.* at 369, 176 N.W.2d at 120–21. The supreme court determined that the plaintiff was stuck with the verdict. *Id.* at 370–71, 176 N.W.2d at 121. The court explained that because he failed to object to the instructions, they became "law of the case, and whether the evidence is sufficient to sustain the verdict must be determined by testing the evidence against the law as set forth in the trial court's instructions." *Id.* at 370, 176 N.W.2d at 121

5

(citation omitted). The principle in *Schunk* is that a civil plaintiff is bound by a verdict that rests on a final instruction that never became the subject of any objection. This principle does not precipitate a holding that a jury in a criminal case is bound by an incomplete preliminary instruction that was always subject to augmentation by final instructions and also subject to the district court's authority to amend the instructions consistent with the law and the evidence. We hold that the district court did not err by denying Trice's motion for judgment of acquittal.

## II

Trice argues that the district court erred by adding to the definitional instruction while the jury was deliberating, defining family or household members to include persons involved in a significant romantic or sexual relationship. It is true that the district court must, on request, tell the parties before their closing arguments what instructions will be given. Minn. R. Crim. P. 26.03, subd. 19(2). But if the jury asks for additional instructions on the law during its deliberation, the district court may give additional instructions. Minn. R. Crim. P. 26.03, subd. 20(3)(a). We review the decision to provide additional jury instructions for abuse of discretion. *State v. Laine*, 715 N.W.2d 425, 434 (Minn. 2006) ("It is well established that the trial judge may, in his discretion, give additional instructions in response to a jury's question on any point of law.").

Trice argues that the district court's additional instruction improperly introduced a new concept of criminal liability, prejudicing Trice because the timing prevented him from introducing evidence, examining witnesses, or arguing to the jury about the alternative means to establish a family or household relationship. Trice's argument is generally

6

persuasive, but not prevailing here. Adding a possible means of proving the charged crime's element after the close of all evidence and arguments could, and in many cases would, put the defendant at an unfair and unjust disadvantage. Trice relies appropriately on *United States v. Gaskins*, 849 F.2d 454 (9th Cir. 1988), to make the point. The *Gaskins* court considered the federal analogue to Minnesota Rule of Criminal Procedure 26.03. The Ninth Circuit reversed the appellant's drug convictions because the district court introduced a new theory of liability into the case by giving the deliberating jury an additional instruction on aiding and abetting liability. *Gaskins*, 849 F.2d at 460. The court determined that this instruction prejudicially affected the defendant because he was not given an opportunity to address it in his closing argument. *Id.*

In this case, however, Trice had already effectively conceded the challenged element of a qualifying relationship even before the state began offering evidence. Knowing (or having reason to know) of the cursory and alterable nature of the preliminary instructions and that the district court could amend those incomplete preliminary instructions at any time, Trice began his case by admitting that he had a domestic-abuse-qualifying relationship with J.P. In opening statements, Trice's counsel revealed that Trice's defense indeed depended on there having been such a relationship: "He's here today because [J.P.] was mad. She was mad at him, their relationship was ending, and she wanted to get back at Mr. Trice." Trice repeated the same argument in closing, claiming that J.P. merely concocted the story to retaliate because "[Trice] said their relationship was ending." Trice cannot now persuasively argue that he was prejudiced by being denied the opportunity to refute the existence of a relationship whose existence he made the

7

foundation of his defense. The district court did not abuse its discretion by instructing the jury that family or household members include persons in a romantic or sexual relationship.

**III**

Trice argues that the district court erroneously admitted B.R.'s testimony that she suffered mental illness as a result of Trice's prior abuse. In a domestic-abuse prosecution, the district court may admit

> [e]vidence of domestic conduct by the accused . . . against other family or household members, . . . unless the probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issue, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Minn. Stat. § 634.20 (Supp. 2013). We review the admission of prior-relationship evidence under section 634.20 for abuse of discretion. *State v. Lindsey*, 755 N.W.2d 752, 755 (Minn. App. 2008), *review denied* (Minn. Oct. 29, 2008). The appellant must establish both that the district court abused its discretion and that the appellant was prejudiced. *Id.*

We will focus on the question of prejudice, which we conclude is dispositive here. Even if the district court erred by admitting the testimony, we deem the error harmless. B.R. testified that Trice's choking her caused her to incur mental illness, but the jury was not apparently unduly influenced by this testimony as it considered the state's contention that Trice choked J.P. and acquitted him of assault by strangulation. *See State v. Glaze*, 452 N.W.2d 655, 662 (Minn. 1990) (noting that a prosecutor's improper remarks likely did not affect the verdict because the jury ultimately acquitted the defendant of three counts of premeditated murder). The district court also twice gave the jury a cautionary instruction

(once immediately when the evidence was offered and again just before deliberation) explaining how the jury must properly use the prior-relationship testimony. These cautionary instructions lessened the probability of the jury giving undue weight to the evidence. *See Lindsey*, 755 N.W.2d at 757.

Trice contends that the prior-relationship testimony was not harmless because the state's case was weak, focusing on J.P.'s recantation of her report to police and on the hotel employees' confusion about the assailant's race. The contention is not compelling. We presume that modern jurors are commonly aware that domestic-abuse reporters may (and frequently do) recant their reports for reasons that may have nothing to do with the accused abuser's innocence. And J.P.'s recantation was suspicious on its face and particularly unconvincing, as she not only denied having been assaulted and injured but also claimed not even to recall being photographed to document her injuries. The jury heard all of the witnesses consistent and corroborating contemporary accounts, which establish that a loud, apparently violent episode occurred and that J.P. suffered visible injury as a result. And the employee witnesses' confusion about the fleeing assailant's ethnicity is immaterial since all of the evidence and one of Trice's own defense theories establish that Trice is the person with whom J.P. had the altercation.

Given the jury's decision to find Trice not guilty of the kind of abuse that B.R. said she suffered, the district court's cautionary instructions, and the overwhelming evidence of guilt, it is unlikely that B.R.'s testimony significantly affected the verdict.

**Affirmed.**

9