*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1634**

State of Minnesota,
Respondent,

vs.

Eric Michael Bohumil,
Appellant.

**Filed August 29, 2016
Affirmed
Bjorkman, Judge**

Dakota County District Court
File No. 19HA-CR-14-449

Lori Swanson, Attorney General, St. Paul, Minnesota; and

James C. Backstrom, Dakota County Attorney, Jennifer S. Bovitz, Assistant County Attorney, Hastings, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Andrea Barts, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Rodenberg, Presiding Judge; Peterson, Judge; and Bjorkman, Judge.

**U N P U B L I S H E D   O P I N I O N**

**BJORKMAN**, Judge

Appellant challenges his assault and terroristic-threats convictions, arguing that the district court committed reversible error by admitting relationship evidence under

Minn. Stat. § 634.20 (2012) and that he was deprived of his right to a fair trial by the admission of irrelevant and prejudicial evidence. We affirm.

**FACTS**

On February 2, 2014, C.C. contacted law enforcement to report that appellant Eric Michael Bohumil had assaulted her earlier that day. C.C. and Bohumil were previously involved in a romantic relationship and have a minor son. The assault occurred when C.C. was picking up the child at the residence of Bohumil's grandparents. When she arrived at the residence, Bohumil approached her vehicle and grabbed her through the open window. He then hit her, screamed at her, squeezed her neck, and told her that if he had a weapon he would kill her.

After Bohumil thwarted her efforts to drive away, C.C. left the vehicle and approached a neighbor's house. Bohumil pleaded with her not to cause any problems because it was his last chance to live with his grandparents. C.C. told him to get their son; Bohumil complied. But as soon as the child was in the car, Bohumil again attempted to prevent C.C. from leaving by holding the driver-side door open. This time C.C. was able to drive away.

C.C. contacted law enforcement when she got home. Burnsville Police Officers Paul Oelrich and Tom Smith responded, interviewed C.C., and photographed her injuries. Officer Oelrich observed that some of C.C.'s fingernails had been ripped off, and that she had minor cuts on her hands and red abrasions on both sides of her neck. Respondent State of Minnesota charged Bohumil with making terroristic threats, felony domestic assault, and domestic assault by strangulation.

2

Prior to trial, the state moved to admit relationship evidence pursuant to Minn. Stat. § 634.20. Specifically, the state sought to admit evidence that Bohumil strangled C.C. on a previous occasion in Texas, evidence of Bohumil's temper and how it impacted his relationship with C.C., and evidence that Bohumil had previously used physical acts of punishment against his son. Bohumil opposed the motion, arguing that he stipulated to his previous domestic-assault conviction precisely to keep such prejudicial evidence away from the jury. The district court ruled that C.C. could testify about the previous strangulation incident and how Bohumil's anger impacted their relationship, but could not testify about any conduct related to their child.

Bohumil testified in his own defense. He admitted using inappropriate language and insulting C.C., but denied assaulting or threatening her in any way. He further testified that C.C. called him six months later and admitted lying to police about the incident. Bohumil's friend, M.P., testified that he was with Bohumil when C.C. made this call, and confirmed her admission. C.C. acknowledged making the call, but denied Bohumil's assertion that she admitted lying. She testified that Bohumil asked her to recant her story, and acknowledged that she had recanted an allegation against Bohumil in the past.

The jury found Bohumil guilty on all counts. The district court sentenced Bohumil to 27 months in prison for the domestic-assault conviction. Bohumil appeals.

**D E C I S I O N**

**I.** **The district court did not abuse its discretion by admitting relationship evidence under Minn. Stat. § 634.20.**

Evidence of domestic conduct by a defendant against an alleged victim of domestic abuse is admissible unless its probative value is substantially outweighed "by the danger of unfair prejudice" to the defendant, "or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Minn. Stat. § 634.20. Such evidence is offered to illuminate the relationship between a defendant and an alleged victim. *State v. McCoy*, 682 N.W.2d 153, 161 (Minn. 2004). We review a district court's admission of relationship evidence for abuse of discretion. *State v. Lindsey*, 755 N.W.2d 752, 755 (Minn. App. 2008), *review denied* (Minn. Oct. 29, 2008).

Bohumil argues that the challenged relationship evidence had little probative value because it was unnecessary to prove any element of the charged crimes. We are not persuaded. As noted above, such evidence is designed to put the relationship between the defendant and the alleged victim in context. *McCoy*, 682 N.W.2d at 161. Indeed, before relationship evidence is admitted, the district court should instruct the jury, as the court did here, that the evidence is "being offered for the limited purpose of demonstrating the nature and extent of the relationship between [Bohumil] and [C.C.]" to assist the jury in determining if Bohumil committed the charged offenses. *See State v. Barnslater*, 786 N.W.2d 646, 653 (Minn. App. 2010) ("A district court should instruct the jury regarding the proper use of relationship evidence both when it is received and during final instructions), *review denied* (Minn. Oct. 27, 2010).

4

Bohumil also contends the evidence lacks probative value because, unlike the victim in *McCoy*, C.C. did not recant her allegations. We disagree. Relationship evidence has significant probative value when it assists the jury in evaluating witness credibility. *Lindsey*, 755 N.W.2d at 757; *see also State v. Matthews*, 779 N.W.2d 543, 549 (Minn. 2010) (noting relationship evidence is relevant because it assists the jury in assessing witness credibility). While C.C. did not recant to law enforcement or at trial, both Bohumil and M.P. testified that she told Bohumil in August 2014 that she lied about the incident. C.C. denied doing so, instead stating that Bohumil asked her to recant. As in *McCoy*, witness credibility was a determinative issue.

Evidence relating to the Texas assault helped establish the relationship between Bohumil and C.C. and placed the incident in context in a way that helped the jury evaluate their credibility. In the Texas incident, Bohumil attempted to pull C.C. out of a car, strangled her, and hit her across the face. C.C. attempted to recant—despite independent witnesses to the assault—because of pressure from Bohumil and his family. But Bohumil ultimately pleaded guilty to misdemeanor domestic assault. Here, C.C. testified that Bohumil again pressured her to recant, but she did not because she was "done being abused by him." Given that the two incidents involve similar assaultive conduct and allegations that C.C. fabricated the assaults and then admitted to lying, the relationship evidence helped put the charged incident into proper context. *State v. Hormann*, 805 N.W.2d 883, 890 (Minn. App. 2011), *review denied* (Minn. Jan. 17, 2012).

Finally, Bohumil argues that the relationship evidence was unfairly prejudicial because it created a risk that the jury would convict him based on his prior conduct rather than the charged conduct. But the district court minimized any potential prejudice by instructing the jury before the state offered the evidence and again at the conclusion of the trial, that the evidence was being offered for "the limited purpose of demonstrating the nature and extent of the relationship between [Bohumil] and [C.C.]" and that the jury should not convict Bohumil on the basis of similar conduct on a prior occasion. These cautionary instructions "lessened the probability of undue weight being given by the jury to the evidence." *Lindsey*, 755 N.W.2d at 757 (quotation omitted); *see also State v. Ferguson*, 581 N.W.2d 824, 833 (Minn. 1998) (stating we assume the jury follows a district court's instructions). On this record, we discern no unfair prejudice.

## II. Bohumil is not entitled to a new trial based on evidentiary errors.

Bohumil argues that he was prejudiced by C.C.'s testimony that (1) his dog bit his finger off because he abused it, (2) she knew M.P. from Bohumil's past drug dealings, (3) she has used marijuana with Bohumil, and (4) Bohumil did not want to be there for his son. Bohumil objected to all this testimony except C.C.'s statement that she had previously smoked marijuana with Bohumil.

Because Bohumil did not object to C.C.'s testimony regarding Bohumil's marijuana use, we review for plain error. *State v. Word*, 755 N.W.2d 776, 781 (Minn. App. 2008). Under the plain-error test, Bohumil must establish the following: (1) error, (2) that is plain, and (3) affects his substantial rights. *State v. Griller*, 583 N.W.2d 736, 740 (Minn. 1998). If all three prongs of the plain-error test are established, we will then

6

consider whether the error must be corrected to ensure the fairness and integrity of the judicial proceeding. *Id.*

Bohumil asserts that the district court plainly erred by admitting C.C.'s testimony regarding Bohumil's use of marijuana because it is irrelevant and inadmissible prior-bad-acts evidence. We are not persuaded. This testimony responded to defense counsel's cross-examination regarding C.C.'s regular use of marijuana. The prosecutor argued that such evidence was improper impeachment, but the district court overruled the objection and directed C.C. to answer the question. She responded, "I have been known too. Even with Mr. Bohumil." We conclude there is no plain error. Bohumil brought up the issue of marijuana use. And since the complaining witness implicated herself in the alleged prior bad act, it is unlikely such testimony affected Bohumil's substantial rights.

We review the three objected-to evidentiary challenges for an abuse of discretion. *State v. Litzsau*, 650 N.W.2d 177, 182 (Minn. 2002). Such errors require reversal "if there is any reasonable doubt that the result would have been different had the evidence not been admitted." *State v. Grayson*, 546 N.W.2d 731, 736 (Minn. 1996) (quotation omitted).

Here, there is no reasonable doubt that the result would have been different had the challenged evidence not been admitted. Bohumil's assertion that C.C. testified he did not want to be there for his son ignores the context of the testimony. To rebut Bohumil's assertion that C.C. was lying about the assault, the prosecutor asked her to explain how difficult the incident and criminal proceeding had been for her. C.C. explained that their son missed Bohumil, wanted to see him, and she did not want to prolong the matter and

7

keep the two of them apart. Bohumil also testified generally that he was a good father and wanted to see his son, but could not because of an order for protection. Thus, the majority of testimony suggested that his son wanted to see him and was upset that he was unable to do so.

Likewise, the testimony that Bohumil abused his dog and reference to his past drug dealing did not play a substantial role in the jury's decision. Both remarks were brief, and the district court immediately sustained counsel's objections. The district court ordered the reference to drug dealing stricken from the record and instructed the jury to disregard it. *See State v. Budreau*, 641 N.W.2d 919, 926 (Minn. 2002) (stating there is a presumption that the jury follows the district court's instructions). And as noted above, C.C. acknowledged her own drug use. Given the limited nature of these references and the fact that the district court immediately sustained Bohumil's objections, there is no reasonable likelihood that the outcome would have been different absent the allegedly improper statements. On this record, we conclude that Bohumil is not entitled to a new trial based on claimed evidentiary errors.

**Affirmed.**